**FILED**

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

BERNARD S. LEVI  #00283-014

FCI-Allenwood PLAINTIFF

PO B 2000

White Deer, PA 17887

vs

CIVIL NO.

JURY TRIAL DEMANDED

HARLEY LAPPIN  DIRECTOR
FEDERAL BUREAU OF PRISONS,
320, FIRST STREET, N.W.,
WASHINGTON, D.C. 20534

SCOTT DODRILL, NORTHEAST
REGIONAL DIRECTOR FEDERAL BUREAU
OR PRISONS, U. S CUSTOM HOUSE,
7TH FLOOR, 2ND AND CHESTNUT STREET,
PHILADELPHIA, PA. 19106

Case: 1:07-cv-01656
Assigned To : Unassigned
Assign. Date : 9/20/2007
Description: Pro Se General Civil

JURY ACTION

HAROLD WATTS, ADMINISTRATIVE REMEDY
COORDINATOR/CENTRAL OFFICE FOR THE
FEDERAL BUREAU OF PRISONS, 320 FIRST STREET
N.W., WASHINGTON, D.C. 20534

WARDEN KAREN HOGSTEN,FCI ALLENWOOD
IMMIGRATION FACILITY, P.O. BOX 2000,
White Deer, Pa. 17887

JEFFERY RALEIGH, ASSOCIATE WARDEN
FCI ALLENWOOD IMMIGRATION FACILITY, P.O.
BOX 2000, WHITE DEER, PA. 17887

D  NAU , FOOD SERVICE ADMINISTRATOR,
FCI ALLENWOOD IMMIGRATION FACILITY, P.O. BOX
2000, WHITE DEER, PA. 17887

C. MCINTYRE, UNIT MANAGER FCI ALLENWOOD
IMMIGRATION FACILITY, P.O. BOX 2000, White
DEER, PA. 17887

D. FERRY, CASE MANAGER, FCI ALLENWOOD
IMMIGRATION FACILITY, P.O. BOX 2000,
WHITE DEER, PA. 17887

RECEIVED

JUL 3 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Counselor Mrs. Rancks, FCI ALLENWOOD
IMMIGRATION FACILITY, P.O. BOX 2000,
WHITE DEER, PA. 17887


MRS.K. FEGERS, FCI SCHUYLKILL, P.O. BOX
759, MINERSVILLE, PA. 17954


MRS. B. KRAKOWSKI,FCI SHUYLKILL, P.O.
BOX 759, MINERSVIILE, PA. 17954


_____DEFENDANTS. /_____



CIVIL RIGHTS VIOLATION, ILLEGAL DETENTION IN IMMIGRATION FACILITY AS AN
AMERICAN CITIZEN, RICO VIOLATION, VIOLATION OF THE LAND USE AND INSTITUT-
IONALIZED PERSONS ACT ( RLUIPA), COMPLAINT OF CLASSED-BASED DISCRIMINATORY
PRACTICES, DUE PROCESS VIOLATION, CRUEL AND UNUSUAL PUNISHMENT AND EQUAL
PROTECTION VIOLATION BY BUREAU OF PRISONS EMPLOYEES
_____


( FIRST, FIFTH, EIGHTH, FOURTEENTH AMEMDMENT, 18 U.S.C. 1961-62, 42 U.S.C.
§§ 2000 VIOLATION, AND 42 U.S.C. 1985)


JURISDICTION: 28 U.S.C. 1331


JURISDICTION ACTION:  BIVENS ACTIONS COMPLAINT


PARTIES

1). Plaintiff, Bernard S.Levi, is currently incarcerated at FCI Allenwood

2). Defendant: Harley Lappin, is the Director of the Federal Bureau of Prisons,
and is responsible for the overall operation, safety, control, management,
training, policy regulation and supervision of all federal prisons vested
to him by the U. S. attorney general who maintains principle place of buisness
in the District of Columbia pursuant to 18 U.S.C. 4041-4042, 4081, Program
Statement 5100.8; D.C. Code § 13-422. He is sued in his individual capacity.


3. Defendant:  Scott Dodrill, Northeast Regional Director of the Federal Bureau
of Prisons, and is ultimately responsible for training and supervision of the
correctional personel vested to him by the Disrector and the U.S. Attorney
general pursuant to 18 U.S.C. 4041,4042, 4081 and P.S. 5100.08. He is sued in
his individual capacity.


4).Harold Watts, Administrative Remedy Coordinator/ Central Office for the BOP
who is responsible for the overall operations, monitoring of administrative remedies,

(3)

control, training and supervision as the  supervisory official overseeing
the administrative remedies pursuant to 18 U.S.C. 4041,4042,4081, P.S.
5100.08. He is sued in his individual capacity.

5. Defendant: Warden Karen Hogsten, is the warden at FCI Allenwood a immigration
facility, and is responsible for control, management, training,
policy regulation and supervision of her staff vested to her by the
Director thru the U.S. Attorney General pursuant to 18 U.S.C. 4041,
4042, 4081, and P.S. 5100.08. She is sue in her individual capacity.

6. Defendant: Jeffery Raliegh is the Associate Warden at FCI Allenwood a immigrat-
tion facility and is responsible for control. management. training,
policy regulation and supervision of the staff vested to him pursuant
to 18 U.S.C. 4041,4042, 4081, and P.S. 5100.08. He is sued in his
individual capacity.

7. D  Nau, Food Service Administrator at FCI Allenwood a immigratin facility
who is responsible for control ,management, training, policy regulation,
sanitation and supervision over the food service staff and inmates
vested to him pursuant to 18 U.S.C. 4041, 4042,4081, and P.S. 5100.08.
HE IS SUED IN HIS INDIVIDUAL CAPACITY.

8. Defendant: C. McIntyre, is plaintiff Unit Manager and is responsible for policy,
regulation, supervision and management pursuant to 18 U.S.C. 4041,4042
4081, and P.S. 5100.08. He is sued in his individual capacity.

9. Defendant: D. Ferry, is plaintiff Case Manager and is responsible for policy,
regulation, supervision and management pursuant to 18 U.S.C. 4041,
4042, 4081, and P.S. 5100.8. He is sued in his individual capacity.

10. Defendant.____ Rancks, was plaintiff's former counselor who is now stationed
at building 5 at FCI Allenwood Witness Protection Program is
responsible for policy, regulation, supervision and management
pursuant to 18 U.S.C. 4041,4042, 4081 and P.S. 5100.08. She is
sued in her individual capacity.

11. Defendant: Mrs. K. Fegers, Education Department employee at FCI Shuylkill
who is responsible for policy, regulation, supervision and management
pursuant to 18 U.S.C. 4041,4042, 4081 and P.S. 5100.08. She is sued
in her individual capacity.

12. Defendant: Mrs. B. Krakowski, Education Department employee at FCI Shuylkill
who is responsible for policy, regulation, supervision and management
pursuant to 18 U.S.C. 4041,4042,4081, and P.S. 5100.08. she is sued
in her individual capacity.

<u>FACTS</u>

<u>EVENTS AT FCI ALLENWOOD</u>

On December 20,2006, plaintiff was illegally transferred at FCI Allenwood a immigration facility after he filed a habeas corpus petition in the Middle District of Pennsylvania challenging his custody/security classification scores and his institution placement, and other issues that was untimately dismissed because the court stated plaintiff did not exhaust administrative remedies in that action which he had, and has exhausted remedies in this action to resumit this action with other predicate acts of racketeering by BOP officials.

Upon his transfer to FCI Allenwood, BOP officials in the Central Office, North east Regional Office, Officials at USP Lewisburg, FCI Schuylkill and FCI Allenwood based on "meeting of the minds" have all conspired to single plaintiff out for retaliation, harassment. harm and cruel and unusual punishment by networking with each other to deprive plaintiff rights and privileges based upon classed-based indiviously discriminatory aminus while acting in concert with each other to commit unlawful acts by unlawful means to inflict a wrong and overt acts against plaintiff, be engaging in Racketerring activity (RICO) Criminal action in viloation of 18 USC 1961-62; 42 USC 1985 , 42 USC§ 2000 and the Fifth, First, Eighth and Fourteenth Amendment of the United States Constitution.

On January 3,2007 shortly after his arrival at FCI Allenwood, petitioner spoke to Case Manager Mr. Ferry about his custody/security classification score and why plaintiff was transferred at FCI Allenwood a immigration facility. Case Manager Mr. Ferry became irate agitated in his answer and response to plaintiff who never disrespected Mr. Ferry in any manner.  Petitioner proceeded to Mrs. Rancks office concerning his placement in a immigration facily. <u>See:</u> ( **Exhibit-1 Inmate Informal Handbook/ FCI Allenwood pages 77-78** ). After speaking to Mrs. Rancks on January 3, 2007 in her office, she became irate, disrespectful and unprofessional towards plaintiff and stated without any reason" Mr. Levi I read your file, and I will not tolerate any of your conduct here that I read in your file, and I have personally informed every female staff about you here at FCI Allenwood. After asking plaintiff to shut the door to her office where we both were inside, Mrs. Rancks then said in a unprofessional tone "watch your back. I took Mrs. rancks statement as a direct threat where I am constantly wtaching over my back and wondering when will I be set up by staff. The Warden Mrs. Hogsten and the S.I. S. were notified in writing, but elected to cover up and suppress my complaint against Mrs. Rancks where plaintiff

was never called for an investigation, and nor was Mrs. Rancks investigated
by her friends and coworkers who are working and acting in nexus with each other
based on "meeting of the minds" to single plaintiff out for retaliation and
criminal acts by a staff who are not monitored or investigated by any outside
independent officials.

To further retaliated against plaintiff to try and keep plaintiff out of
the law library, Mrs. Rancks, Mr. Ferry and Mr. McIntyre plaintiff's Unit Team
members conspired and placed plaintiff on a job assignment at the Recreation
Department when they were aware that plaintiff was never fully medically cleared
by a medical doctor upon his arrival as mandated by policy to start working as all
other inmates who arrived at this institution. These officials were aware of plain-
tiff's medical restrictions for the past 15½ years of no sports, weight lifting,
lower bunk, no prolong standing, no heavy lifting over 15 pounds due to a prior
Lamenectomy /spine operation to his lower spine . **See:__ Exhibit-2 Program Review
Report  dated 10/17/2004. Exhibit-3 Medical Report by Dr. Tharp at USP Leavenworth
dated 4/16/1998.** However, on December 27,2006 Warden Hogsten without having
plaintiff seen by a medical doctor as all other inmates before inmates are assigned
to work falsely and vindictively removed plaintiff's medical restrictions to cause
harm  on plaintiff just to keep plaintiff out of the law library.  **See:__  Exhibit-
4 Program Review Report dated 12/27/06 wh**ich shows the removal of plaintiff's
medical restriction who had not even been seen by any medical doctor at FCI Allenwood
or orthopedic doctor.

Plaintiff was the only inmate who was medically cleared for work upon his
arrival without ever seeing any doctor, when all other 39 inmates who  entered
FCI Allenwood with plaintiff where never assigned any job detail until they were
medically cleared by the medical doctor at another appointment that took 2-3
weeks, but plaintiff was medically cleared on the day of his arrival where he was
assigned to the Recreation Department who was made to sit on benches, stand and
work 8 hours a day in total  violation of plaintiff's medical restrictions that
required light duty.

Plaintiff upon filing complaints to the Warden, Mr. Dodrill Office and Mr.
Lappins Office, was then seen by Dr. D. Pigos at FCI Allenwood where plaintiff had
his first complete physical on Janaury 12,2007  and plaintiff's original medical
restriction of no prolong standing, no heavy lifting, etc were reinstated . This
further shows that Mr. McIntyre,Mr.Ferry, Warden Hogsten and Mrs. Rancks "all"
conspired to delete plaintiff's medical restrictions from his medical files to
subject plaintif to additional punishment violative of the 8th Amendment.
Plaintiff exhausted administrative remedies where Mr. Lappin, Mr. Watts, Mr

Dodrill and Warden Hogsten were all personally informed who based on "meeting of the minds" covered up plaintiffs complaint. See: (Exhibit-5 Administrative Remedy No 441415-A1 by Mr. Harold watts dated June 21,2007 ) who never formed any investigation before he made his opinion.

Plaintiff is being detained in the immigration facility at FCI Allenwood who is a American federal prisoner who's custody/ security classification scores hane been manipulated by the defendants to cause harm or have plaintiff killed to keep plaintiff in a high/maximum security prisons and medium security prison where plaintiff has completed more than 80 percent of his time with less than 40 months remaining. Plaintiff points should have been decreased according to the computer printout. Plaintiff states that inmates with 20 30 50 years and life sentences who are more of an security threat than plaintiff are housed in low security federal prisons and camps. Plaintiff states that inmates similarily situated as is plaintiff with bankrobbery, etc who have 240/260 months with prior criminal history points have been placed in low security and camps. However, plaintiff is being singled out and denied placement in a low security prison because of his complaints against federal officials.

Plaintiff should be housed in a camp or low security federal prison as verfied in his prior custody classification form dated May 22,2002. See: ( Exhibit-6), and May 9,2003. See: ( Exhibit-7 ).. Both these program review reports proves that this is not a mistake of any sort and proves that plaintiff should be housed in a camp or low security prison years ago. However, to set out for plaintiff to be killed or hurt Mr. Lappin, MR. Dodrill, Warden Hogsten, Mr. Watts, Associate Warden Raliegh, Mr. McIntyre, Mr. Ferry and Mrs. Rancks "all" have continued in this conspiracy to manipulate plaintiff's custody points to keep him in a high medium or maximum security federal prison because of his constant comlaints against BOP officials and because he is a minority inmate from D.C. who BOP officials subject to different treatment.

(7)

To further proves his point, plaintiff has attached a copy of the Inmate call-out sheet at FCI Schuylkill dated may 10,2004 that states "Levi"/Camp. **See:** ( **Exhibit-8** ). This proves that after 15 ½ years with more than 80% of his time completed plaintiff should be housed in a camp as other inmates who are similarily siruated. The record will show that BOP officials over the years have manipulated plaintiff's security points to subject him to harm, continue to do so, ans are now using his prior criminal history points of over 20 years old to keep him in a high medium security prison which is in direct violation of the ex post fact clause, and P.S. 5100.07 where these points where not used prior to 2006, and were used to enhance plaintiff's sentence in his criminal conviction in 1992. These scores under plaintiff's criminal history which are over 25 years old should not be used to keep plaintiff in a medium or maximum security prison when white inmate similarily situated points are decreased and deleted when prior convictions in state convictions are over 20 years old, and they have served more than 15½ years as plaintiff, and Bureau of prisons records will support this fact to show black inmates as plaintiff are being discriminated against based on race in violation of 28 **C.F.R. 551.90.**

Plaintiff has enrolled in College courses, completed his GED in 1993 at USP Lewisburg on his own, completed the 40 hour drug treatment program, and has completed more than 80 percent of his incarceration, and is still being housed in a medium security prison, when other inmates similarily situated as plaintiff with identical convictions or worse are being housed in low"S or camps.

BOP officials have inmates with 10,20,30,40,50 years or more being housed in lows and camps, and inmates with child pornography, rapes, internent child pornography housed in low's and camp's where public safety factors are waive for these inmates who are a direct threat to children and society as a whole. However, the Director Office, Regional Director's Office Mr. Harrell Watts, Warden Hogsten, Mr. McIntyre,Mr. Ferry and Mr. Raliegh and other co-conspirators in the BOP crime family criminal network are making decisions based on "meeting of the minds" to further retaliate against plaintiff to deny all his valid complaints based on discriminatory aminus actions in concert with each other based on unlawful means to commit injustice acts against plaintiff. Plaintiff has exhausted administrative remedies in this matter. **See:** ( **Exhibit-9 Response from Mr. Harrell watts dated June 27,2007** ).

Plaintiff fears for his life under the custody of BOP officials in all federal institutions in the state of Pennsylvania who are all related as friends and family members  who are not properly screened  where nepotism is rampant.  BOP officials in federal institutions in Pennsylvania have sought plaintiff out for retaliation, harassment, false incident reports, etc where all plaintiff's complaints are denied that has created a dangerous situation where friends and family members suppress and cover up all his valid complaints, and in light of this plaintiff fears for his life in "any" BOP facility in the state of Pennsylvania

Upon his arrival at FCI Allenwood, plaintiff noticed, examined and ate the food preparations at this facility, After a week, plaintiff requested to be placed on common fare the religious diet because of the unsanitary food preparations on the regular line where meals are not being properly served to be consistent with meals served at other federal institutions that are not immigration facilities. Meals are not served hot, eggs are fried a days before or night before which where served green and blue in color, when fried eggs at "all" federal institutions are fried on the grill in front of inmates except FCI Allenwood an immigration facility where Americal federal prisons as plaintiff are being treated differently and feed differently than other prisoners housed at non-immigrations facilties.

There  is a complete berverage bar in food service for inmates use at "all" federal institutions which are non-immigration facilities that serve Sprite, Coke, Orange, Pepsi, Lemonade soda's etc, and Vitamin C Juice from name brand companies. This immigration facility has no such beverage bar. The only beverage bar in food service here is some non-kosher unnamed water down grape or fruit drink that's being served to inmates by a outside contracter/ friend of members of this institution from the rural surrounding area at FCI Allenwood that's not being inpected by Director Lappin , Mr. Dodrill or Warden Hosgsten. Food is being served in an unsanitary manner where inmates/staff included serve meals without masks, gloves, etc, that's observed everyday by Warden Hogsten, Associate Warden Raliegh, Unit Managers, Facility personel, the Captain, Chaplin and inmate population etc with no respect for the inmate population who ate mostly immigrants. Corn falkes and Skim Milk is served at breakfast at every meal in the morning 365 days a years  which is stale, cheap and generic that's made in Mexico or some other third world country. There  is no name brand American cereal being served at this institution, nor are there any assortment of cereal American made being served , and nor does this institu-

tion serve Pasteurized Homogenized Vitamin D Milk  where Skim milk should
be served as an alternative which is served that way at all Federal,State
private and County facility institutions in America. Skim milk is being
forced on plaintiff and most of the inmate population every day who dont have
the option of other milk above or 25 milk which plaintiff and numerous inmates
are used to having for breakfast that served in 100% of U.S. Hospital's,
Military bases, U.S. Courts, Schools, Resturants and members of the United
States Congress . Skim Milk is nothing but water that's the only milk served
at FCI Alleenwood immigration facility which is not part of the BOP, and does
what it wants without any any regard for regulation and policy while at the
same time being protected by the Warden, Regional Office and the Directors Office.
Plaintiff witnessed the above before being placed on common fare meals. Rice and
Beans is the standard meal at FCI Allenwood which makes up the main meal at any
holiday at this immigration facility. American prisoners are being feed differently
at this immigration facility.


    Plaintiff is being denied his First Amendment right to a complete and proper
religious diet meal mandated by the Constitution and in violation of 28 C.F.R.
547.20-548.20. Inmates on religious diets never receive oranges, bananas, water-
mellon or any other assortment of fruits which have all been taken off religious
meals  and served to inmate on the regular serving line. Staff use the cost to
deny plaintiff the above, and at the same time serves the above to the regular
serving line of about 1300 inmates to discriminate against inmates on common fare.
Inmates on common fare ar supposed to be prepared with assortment of cereal in
individual boxes that are wrapped, as is prepared at all federal institutions and
county and state institutions. However inmates on common fare at FCI Allenwood
receive the same cereal that's prepard to the whole inmate populations thats not
sealed, nor in individual boxes in violation of religious serving meal standards.
Danishes or other muffins are never served. "Only" corn muffins are served on
Saturday and Sundays at FCI Allenwood in violation of the religious serving pract-
ice that's not done at any other facility in the United Sattes except Allenwood.
8oz carton of juice in sealed pacages that's served at all federal, state, and
county  institutions on common fare a mandatory requirement is not being served
at FCI Allenwood. Plaintiff has been instructed that he can drink off the same
beverage bar as the regular population in violation of the religious serving
requirement . Plaintiff's and other inmate on common fare are not getting the
proper portion of iteims on the serving trays. Coffee packages has been taken off

common fare which is no longer considered common fare which plaintiff's meals are not being prepared properly because of the cost associated with common fare as stated by the Warden and the Food Service adminsitrator in their response to plaintiff.

Warden Hogsten and Mr. Nau the food service administrator to save cost at the expense of petitioner's religious dietary rights have choosen to delet itiems off common fare which in reality is not even considered common fare where the above afficials receive a cash budget for keeping the cost down from feeding common fare inmates that warrants a complete investigation. Petitioner also states that there is neither a "nutritutionist" or "dietitian" at FCI Allenwood to monitor the illegal unsanitary feeding practices at FCI Allenwood where plaintiff is forced to but instant milk, juice, cereal etc, from the prison commissary because plaintiff is not being properly provided with proper religious meals at FCI Allenwood. Inmates on low sodium diet and with high blood pressure etc, are not being affored a dietition or nutritutionist to monitor these meal intact in violation of BOP policy and American Correctional Association Standards.

Officials at FCI Allenwood have violated kosher laws concerning religious dietary meals and continue to violate petitioner's First Amendment rights for failure to provide plaintiff with proper religious diet needs by deleting itiems and forcing inmates to consume non kosher itiems prepared for the regular inmates, and meals are not prepared by staff or inmates trained in dietary laws where any inmate or personel not trained in dietary laws are serving meals. Dietary meals are placed and served to common fare inmates on the inmate receiving serving side of the line away from the serving line in violation of serving practices when non kosher meals are served and prepared behind the inmate serving line which plaintiff has filed against, and the Warden and her staff are aware of. See: ( Exhibit-10 Inmate Response Remedy No. 439947-F1 dated Feb 2, 2007 ) by Warden Hogsten. See: ( Exhibit-11 Response from Associate Warden Jeffery S. Raliegh dated Feb 26,2007 ). Petitioner has exhausted adminsitrative remedies in this matter on May 29,2007. See: ( Exhibit-12 by Mr. Harrel watts in Remedy No. 439949-A1 ).

The Warden and food service administrator are receiving a cash bonus for deleting itiems off common fare and are serving unnamed foods made in China, Mexico and other third world countries on the regular serving line and common fare, which in turn, has subjected plaintiff to First Amendment violation and cruel and unusual punishment that's in total violation of American feeding practices and decency where a nutritionist and dietitian need to be hired to monitor the corrupt acctions of these officials who have no regard for policy, regulation, petitioner or other inmates health.

On March 28,2007 around 2:00pm Mrs. Parker, plaintiff's secretary in Unit 4a delivered his returned "special legal mail" that was returned by the post office because unable tp forward to sender. In signing for the returned legal mail petitioner noticed that the envelope was deliberately cut opened where the contents of the mail was read by prison officials in violation of 28 C.R.F. 540.24. See: ( Exhibit-13). The PostMaster on April 3, 2007 in a letter to plaintiff stated that their office never opened up the mail that disputes FCI Allenwood officials who stated that the post office open up the mail. See:    ( Exhibit-14 ).

Plaintiff also states that sealed certified legal mail that he sent to Congressman Peter King (R.N.Y. ) in Certified No. 7006-0810-0004-1216-5986 on January 25,2007; certified mail sent to Congressman James E. Clyburn (D.S.C.) in certified No. 7006-2150-0004-7651-1322 on May 11, 2007, and certified mail sent to Congressman Steny Hoyer ( D.Md ), in  certified No. 7006.2150-0004-7651-1339 on may 18, 2007 have all been re-opened by officials here at FCI Allenwood and have been re-written with plaintiff's handwriting/name on the certified receipts to monitor his mail to Congressman and Senators a First Amendment violation. Plaintiff has never received his return receipts  for any of the certified receipts above which he paid extra postage for because he thinks and knows that his mail has been reopened and his name rewritten on the envelope a serious proble that's covered up and never investigated by independent officials. Warden Hogsten, Associate Warden Raliegh, Mr. McIntrye, Mr. Ferry Mr. Dodrill and Mr lappin are all aware of the of the situation by written letters from plaintiff and the facts where documents where presented in plaintiff's complaint, but the defendants refuse to intervene where based on "meeting of the minds" they all have form a conspiracy, racketerring enterprise and have sought out to harass, retaliated and cover up all plaintiff's complaints concerning these officials

criminal actions who are involved in a criminal conspiracy under 18 USC 1961-
62 of the Racketerring Influenced and Corrupt Organization Act (RICO). See:
( Exhibit-15 ).


   Plaintiff states that Warden Hogsten and Associate Warden Raleigh  are
aware that there are two copier machines in the library for inmates use "only"
to copy material and the maintenance is being paid for from the purchace of
the copier cards / Inmate Trust Fund account. Petitioner states that he and the
rest of the inmate population are being overcharged and overbilled for the
copier cards that are being sold for $7.55. However, the same copier cards
is sold for $5.20 at every other federal institution . To make matters worse
petitioner is receiving 48 copies on a copier card that supposed to have 50
copies on the card where copies are 10¢ a page, but stops making copies with
20¢ left on the copier card. thus, petitioner is unable to use the 20¢ left
on the copier card that he paid for  which copies are ten cents a page that has
amounted to a form of extortion and blackmail where plaintiff is being over-
charged, and at the same time is not able to use the full use of the copier
card that he paid for as other inmate at all federal insstitutions. Lift off
correction tape is $8.30 when this same tape is about $2.30 at other federal
facilities  near Allenwood. Typewriter ribbons  are sold for $7.60 which  are
sold for #5.00 at all other federal institutions for the same make. See: (Exhibit-
16 Commissary Sheet ).

   Several months ago Warden Hogsten ordered that one of the copiers be
placed behind the inmate law library desk so inmate/law claerks can copy other
inmates confidential legal material that are being sent to the Courts, Congress,
Attorney's, Senators etc. Petitioner has been informed, as other inmates, that
the other copier machine has been placed behind the law library desk for the use
of the clerk/inmate employess "only" to make copies for inmates who have no more
right to the machine, as plaintiff or any other inmate where we the inmate populat-
ion  as a whole from the Inmate Trust Fund are paying for this machine and the
maintenance of the machine which is to be used by any and all inmates to copy their
own legal material where they are paying $7.55 from their prison account for the
copier to mail legal material.

Staff have violated BOP policy by giving another inmate the right to conficate and take possession of another inmates copier card that that inmate paid for in the commissary for that inmate use "only" to be operated by that inmate to zerox confidential legal material.

If an inmate on his own seeks the assistance of an inmate to use his card, then it's own that inmate, but this cannot be said for "all" inmates who have a right not to have another inmate review their legal material. Warden Hogsten, Mr. Dodrill, Mr. Raliegh Mr. Watts and Mr. Lappin are all aware as career BOP employess that it's against regulation, policy and the Constitution for staff to monitor or review inmates outgoing confidential legal material before it's mailed out, so who and what authority has an inmate/convicted of a crime just as plaintiff? This practice is unconstitutional where these officials based on meeting of the minds have sought out to interfere with plaintiff's access to the courts by having another inmate monitor or review his legal material with a machine that's paid for by plaintiff and other inmates as a whole from the Inmate Trust Fund.

The $7.55 price for the copier card, and other itiems on the inmate commissary exceed the national price survey and fair market price for the same itiems sold in retail convenience stores and supermarkets in the community surrounding the correctional institution and several correctional institutions operated by the Bureau of Prisons in the surrounding area that in violation of the porposed settlement agreement in <u>Conchita Washingtion , et.al vs. Janet Reno, et.al.,</u> in Civil No. 93-217,93-290 before the United States District Court for the Eastern District of Kentucky Lexington Division. Petitioner requests to know the purpose and function of the Inmate Trust Fund that's not being made for inmates reviewing which the trust fund formulated by Congress in the 1950's is for inmate use with the purpose of inmate oversight because it's inmates money not the staff, nor does the inmate trust fund belong to the federal budget. There issneither a Inmate Trust Fund Committe or movie committe at most of the federal institutions, as here at FCI Allenwood where inmate have no say so in what staff is doing to the inmate trust fund that is my money, and I have a right to know what it is being used for, and for what, which staff will not disclose to plaintiff which Congress is unaware of that warrants an investigation and congressional oversight.

To further show the extortion tactics of the defendants, if an inmate purchaces itiems from the prison commissary at FCI Allenwood, these same itiems that are sold at other federal prisons cannot be transfered. Thus, staff then conficates these itiems and inmates are then transfered to other institutions that sell the same itiems. See: ( Exhibit-16 Commissary List with * beside the itiem.To further show that BOP officials have violated the Inmate Trust Fund in the past, and now the present,which is ongoing at all federal institution where inmates are being extorted by criminal elements of the BOP. See: ( Exhibit-17 Lexington Herald-Leader dated 8/15/96 ).

The defendants actions have caused harm on plaintiff in violation of his First Amendment rights, and BOP policy and regulation which is the basis of this action to warrant jurisdiction in this court. Plaintiff will be set up, harassed and retaliated against because of his complaints and request of this Honorable Court to monitor petitioner,/ plaintiff and remove plaintiff from the custody and restraints of "any" federal institution within the state of Pennsylvania. Petitioner has exhausted administrative remedies in the matter above. See: ( Exhibit-18 Remedy No. 441014-A1 ) signed by Mr. Harrell Watts who has prejudiced plaintiff for over six years by singling him out to deny "all" plaintiff's valid complaint based on meeting of the minds who is networking with the defendant/co-conspirators in their ongoing criminal conspiracy to harm plaintiff.

Upon plaintiff's arrival in the Federal Bureau of Prisons in 1993, plaintiff was informed that his immidiate family members mentioned in his (PSI) Presentence Investigation Report are automatically placed on his visiting list. This has been, and is the standard procedure for all inmates incarcerated at any BOP facility. See: 28 C.F.R. 540.44 attached as Exhibit-19 ). Petitioner's daughter Ms. Brandi N. Venson , and her mother Mrs. Denise Venson plaintiff's common law wife have been on plaintiff's visiting list for the past 15½ years at numerous maximum security federal prisons regardless of being transfered from one institution to another. See: Exhibit-20 Visiting List dated 6/10/02); Exhibit-21 Visiting List dated 11/14/02. Petitioner has known Mrs Denise Venson for over 24 years who under Pennsylvania law is his common law wife. See: ( Exhibit-22 ).

Mrs. Rancks, Mr McIntyre, Mr. Ferry Warden Hogsten, Associate warden Raleigh, Regional Director Mr. Dodrill and Director Lappin where all persoanlly informed by plaintiff and were aware of the clerical error in the PSI on page 13, paragraph #119 that mentions Denise Venson age 5 which should have been Brandi Venson age 5 which was a clerical error by the probation depratment in Washington D.C in 1993. To further retaliate against plaintiff the defendants above deliberately without any reason **removed** plaintiff daughter and her mother from his visiting list as his immidiate family members to punish plaintiff because of his complaints against this staff and other co-conspirators in the BOP who have all conspired based on meeting of the minds to treat plaintiff different from other inmates similarily situated at all other federal prisons who have immidiate family members placed on their visiting list . These officials to destroy plaintiff's family ties knew that plaintiff's dauther was gravely ill and was dying of Luekemia, but elected to remove his dauhter from his visiting list that was never done at any of the prior federal maximum security federal prisons until plaintiff arrive at this immigration facility that does not respect BOP policy and treats American prisoners as immigrants that warrants an investigation by outside, independent agency and not BOP officials who are so corrupt that they cannot investigate themselfs that's also a conflict of interest.

Plaintiff's daughter died of luekemia at Duke University Hospital on May 4,2007 which plaintiff never had the chance to see his daughter before she died because these officials deliberately remove her off plaintiff's visiting list for no reason other than to harass plaintiff and retaliate against him because of his constant complaints and in violation of BOP policy and regulations that did not warrant the removal of plaintiff's daughter from his visiting list. <u>See:</u> ( **Exhibit- 23 Duke University Notice to FCI Allenwood dated May 4, 2007** ). Plaintiff complained of why his daughter was removed from his visiting list to the Warden Mrs. Hogsten, Director Dodrill, Director Lappin, Mr. McIntyre, and Mr. Raliegh. The warden to further humiliate plaintiff in the BOP ongoing harassment of plaintiff stated that plaintiff never complained to her, when she was informed and was aware of plaintiff's complaint, but elected as always to make false and deliberate statements un-becoming of a federal officials in violation of 18 U.S.C. 1001. <u>See:</u> ( **Exhibit-24 Inmate Response from Warden Hogsten dated May 9,2007**), ( **Exhibit- 25 Remedy Response No. 445106-F1 from Associate Warden Jeffery Raliegh dated April 24,2007** ).

Plaintiff's family called Mr. Lappins Office and Warden Hogsten Office
to offer to pay for plaintiff's transportation to his daughter's funeral
that's afforded to inmates at camps, lows and FCI's/medium security prisons.
Plaintiff's family directly spoke with members of his unit team of Mrs
Parker the unit secretary. The officials above never responded to plaintiff's
family members calls on numerous occassions, and never spoke to plaintiff
regarding his family offer to pay for the prepaid transportation cost security
to the U.S. Marshals which was very disrespectful and unbecoming of a professional
official and policy and regulation that warranted a better response of concern.

These actions were conducted against plaintiff and his family members
to further retaliate against plaintiff by a corrupt and out of control agency
of officials who are not properly trained, and who have no regard for Bureau
of prison policy and regulation, or any moral obligation and decency to plaintiff
and his family members which is an ongoing problem where plaintiff has suffered
emotional distress and public anguish by these officials in violation of his
First Amendment rights.  <u>See:</u> ( **Exhibit- 26 Affidavit from D. Levi dated July
2,2007** ).

All inmate housed on camp's, low's and medium's are afforded the opportunity
to attend family members funerals if their security/custody level warrants the
transportation and if the inmate can afford the cost of transporation to the
U.S. Marshal Service.. If plaintiff had been properly placed in a low or camp
and indicated by the computer plaintiff would have been able to attend his
daughter funeral. However, as stated above these officials elected to manipulate
plaintiff's custody level to keep him in a medium high and maximum security
prisons in hopes that he be killed or harmed.

Mr. Harrell Watts the Central Remedy Coordinator, and the Bureau of Prisons
enforcer in crime to to man to cover up and suppress inmates complaints in
furtherance of the conspiracy based on meeting of the minds has been instructed
to single out plaintiff and deny all his complaints no matter what which Mr.
Watts has done for the past 6 years in every BP-11 that has entered his office
from plaintiff which is over 100 which he has done to further harass plaintiff
and retaliate against him while at the same time abusing and misusing his position

and the color of authority and his uniform to cover up and suppress all
plaintiff's valid complaint who can't be wrong 100% of the time who should
be fired demoted and removed from his position as irresponsible,ignorant,
and unprofessional unbecoming of a federal official. Once the courts does
a review of the record the court will see that Mr. Watts has singled out
plaintiff and denied complaints that have merits, but elected to misuse
his position in furtherance of the criminal organization racketeering en-
terprise of the BOP which is an out of control agency that warrants congress-
ional oversight.

The FBI, CIA, U.S. District Court for the District of Columbia, and the
U.S. Court of Appeals for the District of Columbia; the State of Maryland,
State of North Carolina, and numerous maximum security federal prisons  are
aware that Brandi N. Venson was plaintiff's blood daughter. However, this
irresponsible immigration detention facility ran and operated by Warden Karen
Hogsten with their own brand of rules independent of National BOP policy to
further retaliate against plaintiff removed his daughter who was seriousley
ill from his visiting list who has been on plaintiff's visiting list for over
15½ years  which plaintiff was never afforded the right of a last visit from
his dying daughter. This rule and policy by Warden Hogsten, Director Lappin,
North east Director Dodrill, Associate Warden Raliegh and Mr. McIntyre "only"
applied to plaintiff to further prove plaintiff was singled out by these
corrupt and unprofessional defendants that warrants an investigation for all
of them to be remove, demoted and fired from thier position. Plaintiff has
exhausted administrative remedies in this matter in Remedy No. 445106-F1
dated _June_    _24_ 2007. **See:** ( **Exhibit-27** ).


## EVENTS AT FCI SCHULYKILL

Based on metting of the minds officials sought out plaintiff and
instructed and encourage Mrs. Feger and Mrs. B. Krakowski to write false
incident reports against plaintiff on December 21,2004 in Incident No. 1294300;
on March 7,2005, Incident No. 1319271, and Incident No. 1419884 on January 6,
2006. Each of these incident reports from both female officers above where

(18)

falsley written distorted, bias, discriminating and degrading incident reports
to assault plaintiff's character and cause pain and anguish on plaintiff that
were written in violation of 18 U.S.C. 1001 where plaintiff was subjected to
severe punishment of loss of good time, phone, commissary and visiting privileges
and detained in the Special Housing Unit (SHU) where plaintiff was constantly
sought out for retaliation and harassment by officials who sued the shield of
being hidden behind closed walls out of the view of the public.

On December 21,2004 while researching cases and doing his legal material
and reading a paper Mrs. K. Feger of the Education Department stated after being
coerced by several males co-workers and a female co-worker who all based on
the meeting of the minds in the office reached a plan to stated that Mrs. Feger
observed plaintiff staring at her which she beleived was a "bulg" inside his pants.
Known of the officials were in the office with Mrs. Feger when this happen, but
helped her with writing the false incident report were plaintiff was a target
because of his complaints against staff members. The record will reflect that
plaintiff never stared at Mrs. Feger. Plaintiff never had his pants below his
waist, never had his hands inside his pants, and never exposed himself at any
time to disrespect himself,others or Mrs. Feger to received a incident report
for a (300) series incident report for indecent exposure. See: ( Exhibit-28
300 Series Attached ). Plaintiff never received a (206) series incident report
of making sexual proposal gestures or threats to another. See: ( Exhibit-29
206 Series Attached ). Mrs. Feger who has a husband who works as a officer in
the blocks who made threats to plaintiff to other inmates and staff conspired
with the other staff members to seek a greater punishment agaisnt plaintiff to
retaliate against him whereMrs. Feger under the direction of the other employees
above in the room/office with her for over 15 minutes wrote petitioner a incident
report of (205) series report of engaging in a sexual act. See: ( Exhibit-30
205 Series Attached ).

Plaintiff never had physical or oral sex with any staff member, visitor
or inmate to ever receive a (205) incident report that's "only" applied to inmates
caught physically and orally having sex with staff, visitor or inmate, or caught
in homosexual:relations together. Plaintiff was never envolved in the above but

received greater  punishment for actions that he did not commit that was
written in violation of 18 U.S.C. 1001, so that plaaintiff could be transfered
who was considered a problem to staff because of his complaints . Inamtes who
are charged with exposing themselfs to female staff receive a 300 series incident
report. However, plaintiff never did   an act which staff knew, but elected to
invent a greater sanction on plaintiff to insult his character to further
retaliate against him. Magistrate Judge Blewitt of the Middle District of
Pennsylvania District Court in his opinion after reveiwing all the evidence
stated that plaintiff was never charged with engaging in a sexual act with staff
or inmates or visitors, or exposing himself  which proves that the defendants
wrote a false incident report. See:  ( Exhibit-31 Report and Recommendation from
Judge Blewitt in Civil NO.  1:CV-05-1092 page 16 and 17 dated August 31, 2005  ).


On March 7,2005 Mrs. K. Feger wrote an identical incident report to the
December 21,2004 incident report charging plaintiff with engaging in a sexual act
when again the record showed plaintiff never exposed himself to receive a (300)
series incident report for indecent exposure, never had his hands inside his pants,
never had his pants below his waist. However, Mrs. Feger again wrote a false
and misleading incident report in violation of 18 U.S.C. 1001 to charge plaintiff
with a code (205) of engaging in a sexual act that's "only" applied to inmates
caught in homosexual activity together, caught having physical or oral sex with
staff, inmate or visitor. Mrs. Feger was instructed to write the false and
deliberately misleading incident report to cause harm on plaintiff to raise his
security/custody,classification scores  and to subject him to further punishment
and sanctions and to tarnish his character . Plaintiff never dispected himself,
or Mr. Feger to be charged with the act of a 205. Plaintiff was denied the right
to a proper DHO hearing, witnesses in his favor, where staff were all friends of
each other which created a conflict of interest for plaintiff to receive a fair
an impartial hearing. After reviewing all the evidence, Magistrate Judge Blewitt
of the Middle District of Pennsylvania in his opinion stated plaintiff never
was charged with exposing himself, or engaging in a sexual act with staff, visitor
or another inmate. See:  Exhibit-32 Report and Recommendation from Judge Blewitt
in Civil No. 1:CV-05-1533 page 20,21 and 22 dated January 19, 2006 ).

(20)

After being released from the (SHU) after filing numerous complaints
regarding retaliation and the incident report, petitioner was again set up with
another identical incident report, but this time by Mrs. B. Krakowski while
he was in the law library assisting another inmate and doing his legal work.
Mrs. Krakowski is a friend and co-worker of Mrs. Feger and based on "meeting
of the minds" conspired to again set plaintiff up and retaliate against him
with a false incident report on Janaury 6,2006 which charged plaintiff with
a (205) incident report of engaging in a sexual act. Mrs. Krakowski verified
that plaintiff never exposed himself, never had his hands inside his pants, and
never had his pants below his waist, but as a friend of Mrs. Feger who was re-
moved to the camp once plaintiff was released from the (SHU) Mrs. Krakowski and
other co-workers  who are all friends of Mrs. Feger and Ltt. Snieder
instructed Mrs. Krakowski to write the false incident report in violation
of 18 U.S.C. 1001 of charging plaintiff with engaging in a sexual act because
she stated plaintiff had a "bulg" in his pants. Plaintiff never had sex with
any staff member, visitor, or inmate to be charged or subjected to a (205 )
series incident report where he was stting at the table with another inmate fully
clothed and the law library was full of inmates,as was, the other incident
reports . Magistrate Judge Blewitt in another opinion in that case stated again
that plaintiff never exposed himself, nor engaged in a sexual act with  staff,
inmate or visitor which proves that the incident reports were written with malice
to seek the greater punishment of plaintiff and to slander his character which
in turn has caused harm on plaintiff, and has enhanced his security/custody
points.


Warden Holt, Associate Warden Robinson, Associate Warden Mrs. Carlson
as well, as Lieutenants, plaintiff's Unit Team members, Captain Bebow and
other officers co-conspirators based on meeting of the minds conspired to
falsify a known and outright false charge which all were informed of, but
elected in dereliction of their job title as professional correctional officers
to seek the facts and properly investigate the matter which was done to re-
taliate against plaintiff because of his lawsuits and complaints against BOP
officials where thet cover up suppressed and lied in overlooking evidence
and the facts which plaintiff filed in the matter. Director Lappin and Dodrill
were personally notified, but conspired with their front man Mr. Harrell Watts

(21)

the Administrator Remedy Coordinator who was instructed to deny "all" of plaintiff's complaints to undermine all his attempts in the BOP's corrupt criminal network based on friends and family members who are not qualified or trained to operate BOP institutions, or be in charge of inmates to correct them, when they themselfs are the criminals using the color of the BOP uniform while hidding behind prison walls where they have slander plaintiff and subjected him to harm and retaliation that's unbecoming of any federal official.

Based on ploicy and regulation that originate out of Director's Lappin's Office in Washington, D.C., plaintiff never violated any sexual policy or regulation according to P.S. 5270.07,CN 10 7/30/98, Chapter 5 Attachment A, page 1 and 3, and P.S. 5100.07 8/13/2004, page 55 of 148 of the security/ custody classification manual that's located on the internent at: http:bopdocs, bop. gov/isqery/irlb244/ii/doc. Plaintiff never violated in federal sexual statue or policy pursuant to 18 U.S.C. 2241,2242,2244;2243(b), 18 U.S.C. 4042 (c)(b) of Bop Program Statement 28 C.F.R. 571.71 which defines the meaning of the term sexual act which includes conduct between another person "orally" or "physically; forcible rape, sexual assault or battery.

Plaintiff was never charged with any of the statues above who was charged, as if, he was in receiving a (205) incident report of engaging in a sexual act where he was fully clothed each time, never exposed himself either time and was over 50 yards away from the officers who made the complaints in the prison law library where plaintiff was surrounded by numerous inmates which both female officers deliberately left out to make it seem like plaintiff was the "only" person in the law library with them, Plaintiff has suffered harm and injury, emotional distress and mental anguish in light of these false charges and seeks to have these charges expunged from his record, and that criminal charges and monetary damages be brought against and imposed on Mrs. Krakowski and Mrs. Feger who both based on malice and meeting of the minds wrote a false, deceitful, slanderous and irresponsible incident report on advice of other officers co-conpirators  unbecoming of a professional officer in violation of 18 U.S.C. 1001.

Plaintiff has shown that BOP officials from the top to the bottom have
form a criminal conspiracy corrupt orginization, racketerring act (RICO)
to slander, tarnish, single out, harass and retaliate against plaintiff
while using and abusing the BOP uniform as cover to committ criminal and
unprofessional acts against plaintiff with the assistance of Mr. Harrell
Watts who at times has destroyed and shredded two of plaintiff's administ-
rative remedies (BP-11's) to the central office while plaintiff was in the
SHU at FCI Schuylkill, and deceitfully to interfer and hinder plaintiff
from exhausting his remedies  sent back the shredded remedies to him in
the mail as a  form of retaliation who as plaintiff stated above has outright
as a angry and metally distrubed official with no supervision has denied
all plaintiff complaints, who should be monitored  and removed from his
position and fired who does nothing as a unqualified federal employee but
rubber stamp all false responses from the Regional Office and the Directors
Office. Plaintiff states that these officials action have him thinking that
he will be harmed or killed by BOP officials who will cover up that as they
do any valid, or small complaint because they can as a agency that's out
of control without any congressional oversight or oversight from an independent
agency. It's a conflict of interest for BOP officials to investigate themselfs
who are friends and family members who support one another.

     Plaintiff states that he was subjected to numerous retaliatory tactics in the (SHU)
at FCI Schulykill where his sealed out going legal mail attached with stamps
was pulled open by several officers during a search  of the SHU where plaintiff's
cell was the intended target. Plaintiff's incoming legal mail was opened and
placed in his property without his knowledge and never given to him until he
reviewed his property. Plaintiff was set up by Lt. Broe who personally instructed
Mrs. Feger to write the false incident reports, who himelf was transfered for
assaulting another inmate in the SHU, and who had a history of writing false
charges on inmates at USP Colorado as a members of the cowboys who were indicted
for targeting and assaulting inmates in the SHU and making false charges up on
inmates. This and other numerous infractions accurred in the SHU that was covered
up by Warden Holt, Captain Bebow, Lt. Broe, Associate Warden Robinson, the S.I.S.
department, Regional Director's Office Dodrill and Director Lappin where Mr.
Harrell Watts the front man in this vast racketeering conspiracy network operated
by the BOP all based on meeting of the minds suppressed and covered up "all" plaintiff's
complaints. Plaintiff exhausted adminsitrative remedies on all the issues which
is part of court records in the BOP control a criminal agency.

(23)

## EVENTS AT U.S.P. LEWISBURG

While incarcerated at Lewisburg after being transfered from FCI
Schuylkill in February of 2007, and in furtherance of the criminal conspiracy,
plaintiff was assigned to B-Block in Lewisburg this worst and most filthy unit
at that facility. while housed there Mr. Adimi the Unit Manager and Warden
Willaimson subjected plaintiff to filthy living conditions and unhealthy
living standards which deprived plaintiff of any basic human rights under the
8th amendment. Plaintiff was forced to live in a unconstitutional impermissible
living quarters in a 9x6 box car cell with less than 40 square feet of space
which he shared with another inmate that amounted to less than 15 square feet
of space between them. The close confinement of double celling in B-Block that
houses 2 inmates in a box car single man cell for long periods of time created
a dangerous potential for frustration, tension and violence of double celling
maximum security inmates with 20,30,40, 50 years and life sentence which in it's
cell has constituted cruel and unusual punishment which BOP officials knew was
in violation of the 8th Amendment. In the tiny box car cell, plaintiff was
furnished with one steel frame bunk bed, one above the other, a desk with a
stool, two lockers, one above the other with a tiny window filled with years
of bird feces, and a small toilet that's about 10 inches from plaintiff face
when he sleep on the bottom bunk. Ventialation in the cell was grossly inadequate
with no system to control the temperature or humidity, causing excessive oders,
heat,airborn disease that's constant. The insufficient ventilation system signifi-
cantly increased the risks of transmission of all kinds of diseases . There are
thousands and thounsands of mice the roam B-Block and lay feces everywhere that
hide in the numerous holes where inmates have to place cardboards boxes as a
line of defense in front of the cell doors to keey the army of constant mice
which was a serious and constant problem that staff disregarded and overlooked
because of there disrespect for inmates and not being trained to cure the problem.

The shared box car cells are so tiny "only" one inmate at a time can stand
in the cell at any given time where the other inmate must lie on the bed or stand
in a corner of the cell while the other moves about. The tiny cells in B-Block are
not consistent with standards set by the American Correctional association, the
U.S. Supreme Court,and the American Public Association . Plaintiff states that

set by the Supreme Court mandate that inmates in a two man cell are allocated
68 sqaure feet of space which is not being afforded to inmates in A,B,C and D
Block at USP Lewisburg. Plaintiff was denied minimum civilized measures of life
neccessities which is protected by the 8th Amendment which prohibits penalties
that transgress todays broad and idealistic concept of dignity, civilized stand-
ards, humanity and decency. The cells in A.B.C and D. Blco that were designed
for "only" obe inmate is the same as it was in the 1930's some 70 years ago or
nore that now houses two inmates in the one man box car cell which is cruel and
unconstitutional.

    Cells in B-Block are not consistent with cells in I,J,H,G and E Block
and the Special Housing unit (SHU) at USP Lewisburg which were all renovated
to be consistent with the American Correctional Association standards where two
men in all the renovated cells are afforded more than 90 square feet of space.
However, cells in B-Block which houses the general population is being used as
a displinary block for inmates staff, such as plaintiff, want to retaliate
against which is a cell made for one inmate, not two. Plaintiff states that
two men housed in the tiny box car cells is cruel, barbaric, unhumane and
unconstitutional on it's face which Director Lappin and Regional Director are
aware of who both have made inspections of Lewisburg, and Mr. Dodrill was the
Warden at Lewisburg a few years ago. These unconstitutional practices are being
cover up and overlooked by the same employees who to an oath and sworw to protect
inmates which is a joke. Plaintiff states that the (ACA) American Correctional
Association rubber stamps "all" inspections concerning the filthy, unsanitary
and unconstitutional living conditions at Lewisburg that's violative of the 8th
Amendment that warrants monetary damages to plaintiff for the harm suffered,
and plaintiff states that A,B,Cvand D. Block at Lewisburg should be totally re-
novated consistent with I,J,H,G,E Block and the (SHU) which inmates are living
in unsanitary and dangerous living conditions in A,B,C, and D. Blocks that are
the same as they were over 70 years ago. Plaimtiff has exhausted administrative
remedies in this matter. See: ( **Exhibit-33 Remedy No. 426453-A1  dated January
9,2007** ) by Mr. Harrell watts the front man in the criminal conspiracy in charge
of suppressing and covering up all plaintiff's complaints who is dangerous, un-
professional and ignorant and should be removed from that position as untrustwonthy
while misusing and abusing the BOP uniform.

In furthernace of the conspiracy to further harass and retaliated against plaintiff.while at USP Lewisburg. Lt. Moralez whon conducted a shakedown of E-Block ordered Officer Haney to write a false incident report against plaintiff that he himself knew was false and unbecoming of a officer in violation of 18 U.S.C. 1001 when officer Haney never witnessed the incident, nor ever confronted plaintiff during any search at that time.

On July 19,2006 around 8:15 am Lt. Moralez conducted a shakedown of E-Block the Challenge Program. After ordering everyone to exit the unit, plaintiff exited the unit with his legal material in a envelope which consistent of his pending case against BOP officials. rPlaintiff never in any way interfered with the officers during the search and once he had approached Lt. Moralez plaintiff told Lt. Moralez that he had legal material in the envelope, but officer Moralez became irate, irrational, beligerent ignorant in his actions unbecoming of a professional officer a told plaintiff in a viodictive tone that nothing goes out of the unit where "all' inmates where instructed to exit the unit to the recreation yard where inmates were playing baseball, basketball, lifting weights, running, reading legal material and religious material etc. During any prior search of any block inmates are searched and allowed to take what  is on their possession unless it's not contraband , except on this date. Plaintiff explained to Lt. Moralez that this was his legal material which he was doing legal research on. Lt. Moralez then stated " I don't have to hear this shit", "get up against the wall" Plaintiff was then escorted to the (SHU).

While in the SHU plaintiff received an incident report that was willfully, knowingly and falsely written with malice intent by Officer Haney who stated in the incident report thathe told plaintiff  to put back his legal material in his cell and plaintiff refused. Officer Haney never confronted plaintiff and never told plaintiff to do anything who was not even present when the incident happened between plaintiff and Lt. Moralez. Officer Haney upon intructions from Lt. Moralez deliberate wrote the false incident report in violation of 18 U.S.C. 1001 when he knew he was not the reporting officer to write any report on plaintiff where he had no knowledge of the incident when plaintiff and Lt. Moralez confronted each other at the exit door at E-Block which the cameras on the First floor in E-Block which plaintiff requested to be preserved on 7/19/07 which would support plaintiff and prove his facts. See: ( Exhibit-34 Incident Report dated 7/19/07

At the same time Officer Haney was supposedly saying he spoke to
plaintiff on the first floor in E-Block around 8:15 am, Officer Haney in
another report said that inmate Montgomery refused to get out the shower
on time during a surprised shakedown which inmate were given two minutes to
leave at 8:15 am on the second floor in E-Block which inmate Montgomery was
given an incident report exactly as plaintiff for refusing an order where
he and plaintiff were placed in the same cell in the SHU. Both inmates are
of color and were discriminated against by a very intolerant staff towards
minorities who have a vast network within the BOP in all facilities in the
state of Pennsylvania which is dangerous where friends and family members
have complete control of these facilities and think nother of lying to the
Director's Senators or anybody else were they cover up for each other.

After requesting a staff representative Mr. Deimler to review the camera's
on 7/19/07 which plaintiff instructed the UDC Committe to do who refused to
single plaintiff out, the incident report was expunged because the facts did
show that officer Haney never encountered plaintiff at any time doing the
search to write a incident report against him which was initiated to further
harass and retaliate against plaintiff because of his complaints and lawsuits
against the BOP crimie family who based on "meeting of the minds" have all
conspired together to target plaintiff who fears for his life while being
under the rstraints of BOP officials who are nothering more than criminals
using the color of the BOP uniform to conduct criminal acts and cover up
and suppress any complaints against them which Senator Arlen Specter, Senator
Kennedy and others have been informed, but refused to investigate complaints
made by plaintiff.

Plaintiff requested Counselor ULSH and Metzger who were members of his
UDC Committe to review the cameras on 7/19/07 of the first floor in E-Block
which would have vindicated plaintiff because the cameras would have shown
Officer Haney was never on the first floor at 8:15 am with plaintiff and Lt.
Moralez which Lt. Moralez the reporting officer ordered Officer Haney to
write the false incident report that according to policy he should have written
that was written in violation of 18 U.S.C. 1001. During the UDC Hearing while

(27)

while plaintiff was detained in his cell and question in front of the
whole range in violation of BOP policy where UDC and DHO hearings are
private and conducted behind closed dorrs. Counselor UlSH in a unprofessional
hateful, disrespectful, vindictive and retaliatory manner unbecoming of a
professional officer with malice intent stated in a very childlike manner
that he was not reviewing the camera's because the incident report was
going to the DHO officer which he knew was a falsely written 307 and 399 in-
cident report. Plaintiff asked Mr. ULSH is it standard policy that a 300
series incident report be referred to the DHO. Mr. ULSH stated "this one is".
in a childlike playful manner unbecoming of a middle age man while he was
speaking to plaintiff through the cell opening slot in the SHU without reviewing
the camera's as a professional officer would do before making a decision of
a finding of guilt. Plaintiff was released from the SHU on August 7,2007 after
being kept in the SHU for over 3 weeks for an incident report that staff was
aware was a fradulent incident report which was the direct result of retaliation
against plaintiff because of him complaints. Plaintiff states that there is a
complete injustice and no respect for BOP policy  by a family orientated
and friends hiring practices that ran by family and friends at USP Lewisburg
where officer's contantly abuse their authority while hidding behind closed
doors while abusing the color of the BOP uniform.

      Counselor ULSH should not have had any interest in plaintiff's UDC
hearing because plaintiff personally brought a complaint against him for
destroying a prior BP-8 against a co-worker/friend which Warden Williamson
was aware of when this matter was brought to his attention by plaintiff but
refused to intervene  as a superior officer which prejudiced plaintiff from
receiving an impartial hearing. It's noted that inmate Montgomery has since
been released from custody who also asked that the camera's be reviewed, and
for Mr. ULSH and Metger to monitor them before making a decision and to pre-
serve the camera's on 7/19/07.

      AW Strada, AW Hufford, Warden Willaims, Lt. Moralez, Officer Haney,
the Captain and the S.I.S. Department all conspired in a criminal manner to
have officer Haney write the false incident report against plaintiff where

(28)

they "all" conspired to suppress and cover up the facts. each of these officials should be reprimanded, demoted, fired and subjected to criminal sanctions for violating plaintiff's civil rights who are abusing and misuing the color of the BOP uniform. Mr. Harrell watts, the front man in the criminal conspiracy who works and speaks directly with Mr. Lappin in their D.C. Office where policy and regulation originate from oversee this criminal organization in charge of suppressing and covering up all plaintiff's complaints based on "meeting of the minds" where they have single out plaintiff for retaliation to violate his civil rights who should be removed from his position as unfit, incompetent, unprofessional and without any respect or regard for his job title who has rubber stamped "all" decisons agaisnt plaintiff made by his corrupt co-conspirators in the Wardens Office, Regional Directors Office and the Central Office where plaintiff fears for his life who will be harmed or killed and assaulted, and that will be covered up as normal practice by a very corrupt organization who are involved in racketeering, extortion, fraudulent acts, and criminal actions unbecoming of federal officers. **See: ( Exibit-35 April 6,2007 Remedy from Harrell Watts )** that shoes plaintiff exhausted remedies in this matter.


Plaintiff states that BOP rules and regulations are handed down from the central office out of Washington, D.C. the BOP place of buisness which gives this court venue and jurisdiction under the District of Columbia long arm statue even if most of the defendants do not reside within or maintain principle place of buisness in the District of Columbia, as in the instant case, **D.C. Code. 1981, §§ 13-423. Meyer v. BOP,** 940 F.Supp. 9 ( D.D.C. 1996).


<u>EVENTS AT USP ALLENWOOD</u>

 Plaintiff states that on June 3,1996 while at USP Allenwood he was defending himself while fighting another inmate where the record, witnesses and evidence shows that neither had any weapon which was just a fist fight.. Memorandums and confidential informants, and the UDC all noted that it was only a fist fight. At his DHO hearing plaintiff was seen by the DHO who found plaintiff guilty of fist fight under (201) fist fight. After being transfered to USP Leavenworth from a disciplinary transfer for the above plaintiff noticed efter reviewing documents that his former Unit Manager Mrs. Carlson and Case Manager Mr. Tanner

dictated a false memorandum in his file that falsely stated that plaintiff
assaulted another inmate with brass knuckles which they knew was false, but
was the only way plaintiff could be transfered because of his pending lawsuit
against staff. Plaintiff states that this false memorandum  was written to
seek the greater punishment of plaintiff, raise his custody level, and to
transfere him out of his region because of his lawsuits and complaints  in
violation of 18 U.S.C. 1001, when this officials knew no weapon was involved.

    Plaintiff has suffered harm, emotional distress, wanton infliction of
pain where he was harassed, retaliated against and singled out by these
BOP officials based on "meeting of the minds" where plaintiff has been in-
formed that he has a red tag by his name because he is a writ writer, and that
any and all complaints of his are to be denied by any means. based on meeting
of the minds these officials have conspired with oper BOP officials to deny,
suppress, and cover up all plaintiff's complaints regardless of the merits.
Plaintiff has exhausted administrative remedies on this matter, and has
brought a prior lawsuit in this matter in the U. S District Court of
South Carolina that was dismissed because the court stated plaintiff did ex-
haust his remedies which he had which the records will show in a lawsuit
filed against former Director Mrs. Kathleen Hawk. There has been an  ongoing
and current conspiracy to harass, retaliate and single plaintiff out because
of his complaints against staff,as well as, other inmates who file complaints
against the BOP crime family that uses extortion tactics, murder, retaliation,
harassment and fraudulent acts  against "any" inmate who challenges their
corrupt actions which plaintiff asks of the court to monitor his movements
in the BOP.

    Plaintiff has shown in this complaint with supporting exhibits that each
defendant/ employee of the BOP based upon "meeting of the minds" have conspired
to deprive plaintiff of rights, policy, regulation, privileges and cruel and
unusual punishment based upon class based indiviously discriminatory animus
acting in concert to commit unlawful acts by unlawful means to inflict a
wrong and overt acts aaginst plaintiff that has resulted in a violation of
42 U.S.C. § 1985, 18 U.S.C. 1961-62, 42 U.S.C. §§ 2000, and the First, Fifth
and Fourteenth Amendment violations. each defendant have conspired and
participated in the existence of a RICO enterprise and a pattern of Racketeering
activity in munerous predicate acts based on "meeting of the minds" .

(30)

Plaintiff states that incarcerartion does not divest him of all federal constitutional protections. thus, plaintiff retain the right to be free from racial discrmination , right to due process and certain protections of the constitution which he was denied by the defendants (BOP) officials who are operation a "Mafia" style agency  of corruptness with no respect for the rule of law policy, regulation, or the constitution, where these employees are not being properly screened for qualified personel and not just family members and friends that exist now  where nepotism is rampant which in turn erodes all inmate grievances in good faith and the process of legitimacy which is a serious concern of the inmate population that warrants a complete independant investigation and judicial oversight, as well as, an Congressional oversight.

Wherefore, plaintiff in the interest of justice request of this Honorable Court to grant the following:

1). Grant (Two Million Dollars ) in compensatory damages against each defendant in their individual capacity.

2). Grant (Two Million Dollars ) in punitive damages against each defendant in their individual capacity.

3). Grant plaintiff appointment of counsel in this complex action.

4). Grant any relief as the court deems fit, in the interest of justice.

## CERTIFICATE OF SERVICE

I,Bernard S.Levi, certify that a copy of this forgoing Motion was mailed postage prepaid to the Office of the U.S. Attorney for the District of Columbia, Judiciary Center Building, 555 Fourth Street, N.W., Washington, D.C. 20001, on this _25th_  day of _July_ 2007.

(31)

RESPECTFULLY SUBMITTED

Bernard Levi #00283-016      pro-se
FCI Allenwood, P.O. Box 2000,
White Deer, pa. 17887

Copy Sent To:

Clerk Of The Court For The U.S. District
Court For The District Of Columbia, 333
Constitution Avenue, N.W., Washington, D.C.
20001

CC:002

Ex – 1

# INMATE
# INFORMATION
# HANDBOOK



**FCI ALLENWOOD
P.O. BOX 2000
WHITE DEER, PA 17887-2000
(570) 547-7950**

*Revised September, 2006*

07 1656

# FILED

SEP 2 0 2007

# Inmate Admittance & Orientation

The job must pay at least minimum wage and normally may not require extensive travel. Residence must be at a reputable establishment which can be almost anywhere (parents, wife, friend, YMCA, etc.). The proposed parole plan is thoroughly investigated and approved by the U.S. Probation Officer.

The parole plan is part of the material which is submitted in connection with the Parole Hearing. The Unit Team submits the inmate's release plan to the Probation Officer approximately three to six months before the scheduled parole date. Start preparing for your release now. It is your responsibility to develop and submit your release plan. Do not wait until the last minute to prepare.

RESIDENTIAL REENTRY CENTER TRANSFERS: Inmates who are nearing release and who need assistance in obtaining a job, residence, or other community resources may be transferred to a Residential Reentry Center (RRC).

The Bureau's Community Corrections Branch, within the Correctional Programs Division, supervises services provided to offenders housed in contract facilities and participating in specialized programs in the community. The Community Corrections Manager (CCM) links the Bureau of Prisons with the United States Courts, other federal agencies, state and local governments, and the community. Located strategically throughout the country, the CCM is responsible for developing and maintaining a variety of contract facilities and programs, working under the supervision of the appropriate Regional Administrator. Community programs have three major emphasis, residential, community-based programs, provided by Residential Reentry Centers and local detention facilities; programs that provide intensive non-residential supervision to offenders in the community; and programs that board juveniles and adult offenders in contract correctional facilities.

IMMIGRATION HEARING PROGRAM (IHP):
The IHP is a cooperative effort of the Bureau of Prisons, the Immigration and Naturalization Service, and the Executive Office for Immigration Review. The IHP is designed to provide deportation proceedings for a non-U.S. citizen in Bureau of Prison's custody while the inmate is still serving his/her sentence.



77

# Federal Correctional Institution

FCI Allenwood is designated as an IHP Hearing Site and IHP Release Site for the IHP. All inmate requests concerning the IHP should be delivered to the inmate's specific Unit Team. The Unit Team will forward all requests to Immigration Officials for response.

## CONCLUSION

Hopefully this information will assist you in your first days in federal custody. Feel free to ask any staff member for assistance, particularly unit staff. If you are not yet in custody and have been given this publication to prepare for commitment, the Bureau's Community Corrections Manager or staff at the institution can help clarify any concerns.

I encourage you to utilize the information contained in this handbook as a guide during your daily institutional life. Additionally, I encourage you to capitalize on the many opportunities which are available to you to make positive changes in your life. As was previously stated: START PREPARING FOR RELEASE NOW.

78

Ex - 2

```
    SCHTT                    PROGRAM REVIEW REPORT          *      10-17-2004
    PAGE 001                                                       06:45:59
```

```
INSTITUTION: SCH  SCHUYLKILL FCI
NAME.......: LEVI, BERNARD SHELDON
RESIDENCE..: WASINGTON, DC 20001                REG. NO: 00283-016
TYPE OF REVIEW......: INITIAL CLASSIFICATION/PROGRAM REVIEW
NEXT REVIEW DATE....:                    4/05
PROJ. RELEASE DATE..: 02-23-2011              RELEASE METHOD.: GCT REL
PAROLE HEARING DATE.: NONE                    HEARING TYPE...: NONE
DATE OF NEXT CUSTODY REVIEW:         4/05-     DETAINERS (Y/N): N
CIM STATUS (Y/N)....: Y          IF YES, RECONCILED (Y/N): O/c
PENDING CHARGES.....:            None Known
OFFENDER IS SUBJECT TO NOTIFICATION UNDER 18 U.S.C. 4042(B) (Y/N)....:
    IF YES - CIRCLE ONE - DRUG TRAFFICKING/CURRENT VIOLENCE/PAST VIOLENCE
CATEGORY  - - - - -    CURRENT ASSIGNMENT - - - - - -     EFF DATE   TIME
```

| CATEGORY | | CURRENT ASSIGNMENT | EFF DATE | TIME |
|---|---|---|---|---|
| CMA | CF REMOVAL | COMMON FARE PROGRAM REMOVAL | 08-09-2004 | 1547 |
| CMA | PROG RPT | NEXT PROGRESS REPORT DUE DATE | 02-03-2005 | 1030 |
| CMA | RPP NEEDS | RELEASE PREP PGM NEEDS | 12-23-2009 | 1010 |
| CMA | V94 CVB913 | V94 CURR VIOL BEFORE 91394 | 04-12-1996 | 1745 |
| CMA | V94 PV | V94 PAST VIOLENCE | 09-10-1996 | 1659 |
| CUS | IN | IN CUSTODY | 04-14-1993 | 1052 |
| DRG | DRG I NONE | NO DRUG INTERVIEW REQUIRED | 05-21-2002 | 1602 |
| DRG | ED WAIT V | DRUG EDUCATION WAIT-VOLUNTEER | 08-18-2004 | 1129 |
| EDI | ESL HAS | ENGLISH PROFICIENT | 05-28-1993 | 0810 |
| EDI | GED HAS | COMPLETED GED OR HS DIPLOMA | 06-09-1993 | 1607 |
| FRP | COMPLT | FINANC RESP-COMPLETED | 04-30-2001 | 0918 |
| LEV | MEDIUM | SECURITY CLASSIFICATION MEDIUM | 04-10-2002 | 1523 |
| MDS | ATH RESTR | NO SPORTS/NO WEIGHT LIFTING | 07-19-1999 | 0659 |
| MDS | LOWER BUNK | LOWER BUNK REQUIRED | 07-19-1999 | 0658 |
| MDS | NO F/S | NO FOOD SERVICE WORK | 07-19-1999 | 0657 |
| MDS | REG DUTY W | REGULAR DUTY W/MED RESTRICTION | 07-19-1999 | 0657 |
| MDS | STAND RSTR | NO PROLONGED STANDING | 07-19-1999 | 0658 |
| MDS | WGT 20 LB | WEIGHT-NO LIFTING OVER 20 LBS | 07-19-1999 | 0658 |
| QTR | C02-205L | HOUSE C/RANGE 02/BED 205L | 11-12-2003 | 1032 |
| RLG | PROTESTANT | PROTESTANT | 05-04-1993 | 1800 |
| WRK | 3A ORD PM | UNIT 3A ORDERLY PM | 07-29-2003 | 1241 |

WORK PERFORMANCE RATING: __gets good work reports from CCC

INCIDENT REPORTS SINCE LAST PROGRAM REVIEW: __none _____

FRP PLAN/PROGRESS: __completed in 4/01 _____

RELEASE PREPARATION PARTICIPATION: __Levi has been informed of the expectations
of 6 courses to be completed_____

CCC RECOMMENDATION: __will review 11/13 months from the 10% date._____

PROGRESS MADE SINCE LAST REVIEW: __has no I/R but does not part in any programs.

GOALS FOR NEXT PROGRAM REVIEW MEETING: _____

has Stated he will Not do any Pgm
Unt Team Recm'd Part. ACE at a Rate 1 per
6mos. at I/m choice

07 1656

FILED

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

At my own team meeting on Jan 9, 2007 I noticed that my
medical restrictions of no sports, no weight lifting, no std, no
Prolong standing and no lengthy have been deliberately deleted from my
files which further proves that staff have altered my medical reports.

Ex - 3

MEDICAL REPORT OF DUTY STATUS

NAME LEVI, BERNARD

ADDRESS C-1-12    E-YARD

INPATIENT — INCLUSIVE DATES OF TREATMENT: From: ___ Through: ___

OUTPATIENT — DATE ___ TIME ARRIVED ___ A.M./P.M.   TIME DEPARTED ___ A.M./P.M.

HOSPITAL REGISTRATION 00283-___

DISPOSITION
- Can resume usual occupation — DATE ___
- To return to clinic — DATE ___
- To be hospitalized — DATE ___
- OTHER (Specify): Bottom Bunk

REMARKS: NEEDS DUE TO DISC DISEASE + PRIOR LAMINECTOMY (INDEFINITE)

Can perform limited duties as specified under REMARKS

07 1656

SIGNATURE OF MEDICAL OFFICER OR MEDICAL RECORD LIBRARIAN
J. THARP, M.D.
Medical Officer
DATE 4-10-96

NAME AND LOCATION OF HOSPITAL OR CLINIC
USP-LUN

HS-131 (1/80)

FILED
SEP 20 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 4

ALMBQ                    PROGRAM REVIEW REPORT                    12-27-2006
PAGE 001                                                          10:05:01

INSTITUTION: ALM  ALLENWOOD MED FCI

NAME.......: LEVI, BERNARD SHELDON
RESIDENCE..: WASINGTON, DC 20001                REG. NO: 00283-016

TYPE OF REVIEW......: INITIAL CLASSIFICATION/PROGRAM REVIEW
NEXT REVIEW DATE....: 07-2007

PROJ. RELEASE DATE..: 05-04-2011
PAROLE HEARING DATE.: NONE                      RELEASE METHOD.: GCT REL
                                                HEARING TYPE...: NONE

DATE OF NEXT CUSTODY REVIEW: 10-2007            DETAINERS (Y/N): N

CIM STATUS (Y/N)....: Y             IF YES, RECONCILED (Y/N):  Reviewed

PENDING CHARGES.....:  N/A

OFFENDER IS SUBJECT TO NOTIFICATION UNDER 18 U.S.C. 4042(B) (Y/N).....: Y
   IF YES - CIRCLE ONE - DRUG TRAFFICKING/CURRENT VIOLENCE/PAST VIOLENCE

CATEGORY      - - - - -   - - CURRENT ASSIGNMENT - - - - - - -  EFF DATE    TIME

| CMA | CF REMOVAL | COMMON FARE PROGRAM REMOVAL | 08-09-2000 | 1547 |
| CMA | PROG RPT | NEXT PROGRESS REPORT DUE DATE | 12-05-2009 | 0926 |
| CMA | RPP NEEDS | RELEASE PREP PGM NEEDS | 12-23-2009 | 1010 |
| CMA | V94 CVB913 | V94 CURR VIOL BEFORE 91394 | 04-12-1996 | 1745 |
| CMA | V94 PV | V94 PAST VIOLENCE | 09-10-1996 | 1659 |
| CUS | IN | IN CUSTODY | 04-14-1993 | 1052 |
| DRG | DRG E COMP | DRUG EDUCATION COMPLETED | 12-30-2005 | 1351 |
| DRG | DRG I NONE | NO DRUG INTERVIEW REQUIRED | 05-21-2002 | 1602 |
| EDI | ESL HAS | ENGLISH PROFICIENT | 05-28-1993 | 0810 |
| EDI | GED HAS | COMPLETED GED OR HS DIPLOMA | 06-09-1993 | 1607 |
| FRP | COMPLT | FINANC RESP-COMPLETED | 04-30-2001 | 0918 |
| LEV | MEDIUM | SECURITY CLASSIFICATION MEDIUM | 10-11-2006 | 2146 |
| MDS | LOWER BUNK | LOWER BUNK REQUIRED | 12-19-2006 | 1235 |
| MDS | NO F/S | NO FOOD SERVICE WORK | 07-19-1999 | 0657 |
| MDS | OTHER | OTHER MEDICAL RESTRICTION | 12-19-2006 | 1235 |
| MDS | REG DUTY W | REGULAR DUTY W/MED RESTRICTION | 07-19-1999 | 0657 |
| MDS | SQFT SHOES | SOFT SHOES ONLY | 12-21-2006 | 0834 |
| QTR | D04-961L | HOUSE D/RANGE 04/BED 961L | 12-19-2006 | 1515 |
| RLG | PROTESTANT | PROTESTANT | 05-04-1993 | 1800 |
| WRK | A&O | A&O | 12-19-2006 | 0737 |

WORK PERFORMANCE RATING:  Rec'd @ Alm  12-19-06
                          3·B TRN fm LEW

INCIDENT REPORTS SINCE LAST PROGRAM REVIEW:  None since
01-18-06 ████████████   ██████ ███       @ SCH   07 1656

FRP PLAN/PROGRESS:  TRUST FUND DEPOSITS PAST 6 MO: $ Complt   FILED

FRP PAYMENTS PAST 6 MO: $_____   OBLG BALANCE: $_____

CURRENT FRP PLAN: $_____   PAYMENTS COMMENSURATE: YES ____ / NO ____   SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 5

Administrative Remedy No. 441415-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal in which you claim you are forced to work in a job
inconsistent with your medical restrictions at USP Allenwood.

Our review reveals that the Warden and the Regional Director
adequately responded to the issues you raised in your appeal.
The issue of reassignment to another work assignment falls within
the authority of the Warden as set forth in Program Statement
5251.05 Inmate Work and Performance Pay Program.  The work
program is designed to reduce inmate idleness, while allowing the
inmate to improve and/or develop useful job skills, work habits,
and experiences that will assist in post-release employment.  An
inmate's assignment is made with consideration of the
institution's security and operational needs.  Further, inmates
do not have any entitlements to a specific assignment.

As indicated by the Warden, your transfer paperwork and medical
records were reviewed for work assignments.  At the time you
submitted your Request for Administrative Remedy, your work
assignment was in the Recreation Department.  Contact with
institution staff indicates you were reassigned to the
Correctional Services work detail based on your request.

This response is provided for informational purposes only.


June 21, 2007
_____
Date

_____
Harrell Watts, Administrator
National Inmate Appeals

07 1656

FILED

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 6

MALE CUSTODY CLASSIFICATION FORM          05-22-2002
                                          06:56:44

TT  607.00 *                                              ORG: SCH
PAGE 001 OF 001              FORM DATE: 05-22-2002
                            BERNARD   SHELDON
        REGNO: 00283-016-    MGTV: NONE
(A) NAME....: LEVI        /MEDIUM    MVED:
DES FACL/LEV: SCH
PUBSFTY: GRT SVRTY                SEVERITY.......: (7) GREATEST

(B) DETAINER: (0) NONE           ESCAPES........: (1) > 10 YRS MINOR
MOS REL.....: 105                PRECOMMT STATUS: (0) N/A
PRIOR.......: (3) SERIOUS
VIOLENCE....: (3) 5-10 YRS MINOR

                                 DRUG/ALC ABUSE.: (3) > 5 YRS
(C) TIME SERVED.....: (4) 26-75%  TYPE DISCIP RPT: (5) NONE
MENT/PSYCH STABILITY: (4) FAVORABLE  RESPONSIBILITY.: (4) GOOD
FREQ DISCIP REPORT..: (3) NONE
FAMILY/COMMUN TIES..: (4) GOOD
============================== LEVEL AND CUSTODY SUMMARY =====================
                              SCORED LEV MGMT SEC LEVEL  CUSTODY   CONSIDER
============================== SEC TOTAL  MEDIUM    N/A    IN      DECREASE
BASE  CUST  VARIANCE  SEC TOTAL
+14   +27    -1        +13    APPROVED:____YES /NO  NEXT REVIEW: 5/03

(D) TYPE REVIEW    NEW CUSTODY
    REGULAR          MAX      CHAIRPERSON SIGNATURE....:
   √EXCEPTION       X IN      WARDEN/DESIGNEE SIGNATURE
                    OUT           FOR EXCEPTION REVIEW:
                    COM

REASON(S) FOR NOT FOLLOWING FORM'S RECOMMENDATION:

                Out Cust denied   has PSF of Greatest sev
         Inst off is Armed Bank Robbery
         Hx of escape & violence
                Not "camp" inmate


COPY: CENTRAL FILE, SECTION TWO
      INMATE

          TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

  G0005

                                          07 1656


FILED

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 7

BCHTT  607.00 *        MALE CUSTODY CLASSIFICATION FORM        *        05-09-2003
PAGE 001 OF 001                                                         12:00:14

          REGNO: 00283-016           FORM DATE: 05-09-2003              ORG: SCH
(A) NAME....: LEVI                   BERNARD        SHELDON
DES FACL/LEV: SCH       /MEDIUM      MGTV: NONE
PUBSFTY: GRT SVRTY                   MVED:

(B) DETAINER: (0) NONE               SEVERITY.......: (7) GREATEST
MOS REL.....: 93          1996 fight
PRIOR.......: (3) SERIOUS            ESCAPES........: (1) > 10 YRS MINOR
VIOLENCE....: (2) 5-10 YRS MINOR     PRECOMMT STATUS: (0) N/A
                        1-2006

(C) TIME SERVED.....: (4) 26-75%     DRUG/ALC ABUSE.: (3) > 5 YRS
MENT/PSYCH STABILITY: (4) FAVORABLE  TYPE DISCIP RPT: (5) NONE
FREQ DISCIP REPORT..: (3) NONE       RESPONSIBILITY.: (4) GOOD
FAMILY/COMMUN TIES..: (4) GOOD

================================ LEVEL AND CUSTODY SUMMARY ================================
BASE  CUST  VARIANCE  SEC TOTAL   SCORED LEV MGMT SEC   LEVEL    CUSTODY   CONSIDER
+14   +27     -1      SEC +13     MEDIUM     N/A                  IN       DECREASE
(D) TYPE REVIEW    NEW CUSTODY     APPROVED:____ YES ✓ NO    NEXT REVIEW: 5/04
___ REGULAR          ___MAX
_✗_EXCEPTION         _✗_IN         CHAIRPERSON SIGNATURE....:
                     ___OUT        WARDEN/DESIGNEE SIGNATURE
                     ___COM          FOR EXCEPTION REVIEW:

REASON(S) FOR NOT FOLLOWING FORM'S RECOMMENDATION:

out denied has PSFof
Great severity

07 1656

COPY: CENTRAL FILE, SECTION TWO
      INMATE

G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

FILED

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 8

```
                                SCHUYLKILL FCI              05-10-2004
                                                            14:01:44
                        UNT NE CAMP
            NAME    FROM        TO        TIME  CATEGORY(2)   CATEGORY(3)

                                                QTR ASGN      WRK ASGN

CALLOUTS  FOR  05-11-2004
- - - - - - - - - - - - - -         FCI REC     1330  B07-222U    FCI ELECT
 63289-004  JEROME                                                FCI GED 1W
                                    DAP         0830  C10-005L    FCI EDU OR
 08485-007  JOHNSON                 PSYCH GRP   1430  A03-003U    FCI REC OR
 36844-037  JOLO                    HOSP PHYS2  1230  B03-001L    UNASSG MED
 30992-007  JONES                                                 2A ORD AM
                                    PSYCH GRP   1430  D01-123U    FCI F/S
 34953-037  JONES                                                 PRE4MAURER
                                    PROTESTANT  0930  A02-210U    UNICOR 2
 49691-066  JONES                   EDUC TEST   0715  C02-220U    FCI PAINT
 18723-069  JORGE-SANT                                            SP GED 4Y
                                    EDUC TEST   1230  C02-220U    FCI PAINT
                                                                  SP GED 4Y
                                    PROTESTANT  0930  D10-008L    FCI TUTORS
 12830-050  JUMPP                   DAP         0830  C08-004U    FCI ABE 1K
 27094-016  KEMPER                                                FCI PLUMB
                                    FCI REC     1330  D05-002L    FCI F/S
 10507-007  KIBLER                                                PRE1MAURER
                                    CAMP LAB    0730  B01-117L    FCI F/S
 11158-007  KNIGHT                  A&O/CHAPEL  0830  D05-003U    FCI A/O
 29481-018  LEE                     A&O/CHAPEL  1230  D05-003U    FCI A/O
                                    CAMP LAB    0730  C02-205L    3A ORD PM
 00283-016  LEVI                    A&O/CHAPEL  0830  C05-002U    FCI A/O
 06102-068  LINT                    A&O/CHAPEL  1230  C05-002U    FCI A/O
                                    FCI REC     1330  C01-106L    FCI PM
 03871-036  LOPEZ                   CHAPEL      1330  D07-225L    FCI CHAPEL
 54746-004  LUERS                                                 SUIC COMP
                                    FCI REC     1330  D07-225L    FCI CHAPEL
                                                                  SUIC COMP
                                    CSW 3B      1330  C07-222U    FCI CHAPEL
 11023-055  MARCANO-SA              CSW 2B      1330  B07-229U    2B ORD PM
 51482-066  MASI                    C.SCHLAUCH  0730  C06-117L    FCI REC OR
 23782-179  MATA-ALVAR              CSW 3B      1330  C06-117L    FCI REC OR
                                    A&O/CHAPEL  0830  B03-004L    FCI A/O
 05255-070  MCNAB                   A&O/CHAPEL  1230  B03-004L    FCI A/O
                                    EDUC TEST   1230  C01-128L    CMS CLERK
 41559-054  MCNEIL                                                FCI GED 1W
                                    CMC DEPT    1030  D06-116U    FCI PRE 2M
 08591-030  MENDOZA                                               4B ORD AM
                                    DAP         0830  D02-217U    FCIPRE3M
 54990-066  MICALI                                                4A ORD PM
                                    FCI REC     1330  D02-217U    FCIPRE3M
                                                                  4A ORD PM
                                    HOSP EYE    1030  A06-116L    UNICOR 1
 05004-084  MORENE                  PSYCH GRP   1430  A07-229U    FCI PLUMB
 12127-014  MORENO                  DAP         0830  C10-004L    FCI ELECT
 21792-051  MORENO

 G0002          MORE PAGES TO FOLLOW  .  .  .
```

07 1656

FILED

SEP 2 0 2007


NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 9

**Administrative Remedy No. 444191-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal in which you request to be transferred to another facility because you are an American citizen and do not belong in a facility for witness security and detainee inmates. You allege staff are purposefully manipulating your custody classification points to keep you in a medium security facility.

The intent of Program Statement (P.S.) 5100.08, <u>Security Designation and Custody Classification Manual</u> is to allow staff to use professional judgment in decisions involving custody classification. In keeping with the Bureau's tenet of attempting to place inmates within a 500-mile radius of the anticipated release destination, we note you are within 160 miles. While the application of the Greater Severity Public Safety Factor (PSF) can override a security point score to ensure the appropriate security level is assigned to an inmate, it currently does not affect your security level. We find your current placement is appropriate for your security needs, and is justified by your offense severity and sentence length justify your designation to the facility in which you are assigned.

We do not find any fault in the scoring of your BP-338, *Male Custody Classification*, form. We do not find any evidence of disparate treatment, noting you did not provide any either. Your rationale for making your request is therefore invalid. On a final note, the decision to transfer inmates is ultimately left to the discretion of the Warden and the Chief of the Designation and Sentence Computation Center. We do not find any reason to reverse the decisions rendered in this matter.

Accordingly, your appeal is denied.

June 27, 2007
Date

Harrell Watts, Administrator
National Inmate Appeals

07 1656

**FILED**

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 10

UN. .D STATES GOVERNMENT
Department of Justice
Federal Correctional Institution
Allenwood Federal Correctional Complex
White Deer, PA 17887

**REQUEST FOR ADMINISTRATIVE REMEDY**
**PART B - RESPONSE**

NAME:  LEVI, Bernard
REG. NO.:  00283-016
REMEDY ID: 439947-F1

This is in response to your administrative grievance dated
January 9, 2007, in which you complain about the availability of
only skim milk and not having access to a complete beverage bar
with Pepsi, Coke, Sprite, orange, lemonade, and juice.  You
further indicate you are served non-kosher grape and fruit juice,
gloves and masks are not worn by inmate workers when serving
food, that you do not receive individual boxes of dry cereal, and
that you receive corn bread instead of a danish on your breakfast
tray.  Additionally, you complain food on the regular mainline is
not served hot and is cooked the night before causing it to turn
colors.

You are currently listed as a Certified Food participant and are
authorized to receive the required Certified Food Religious Diet
menu items as outlined by the current Food Service policy.  These
menus are generated by the Central Office and are strictly
adhered to.  These menus list cereal, milk, muffins or danish,
and the beverage that you question in your complaint above.
Cereal can be any kosher approved cereal, and it does not have to
be in individual boxes as you claim.  All cereal purchased is
kosher and purchased in bulk for the Certified Food Religious
Diet menu and for regular mainline menus.  Milk is identified on
the menu as two cups of skim milk for breakfast meals, of which
you are provided.  Saturday and Sunday breakfast meals identify
one, 3-4 oz. muffin or danish to be provided.  Kosher corn
muffins are acceptable to meet the needs of this menu and are
provided to you accordingly.  Lastly, the Certified Food
Religious Diet menus identify 8 oz of sweetened beverage for each
lunch and dinner meals, and one cup of coffee for all breakfast
meals.  A variety of sweetened and unsweetened beverages are
offered for consumption by Certified Food Religious Diet inmates
and regular mainline inmates.  All beverages carry the approved
kosher certification for use on the Certified Food Religious Diet
menu.  Carbonated beverages provide no nutritional value and this
is the reason they have been removed from the beverage bar.
Current beverage bar products are fortified with Vitamin C and
contribute to the daily nutritional intake of all inmates.

07 1656

FILED

SEP 20 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

... staff and inmates in the Food Service Department wear appropriate head wear, gloves, aprons and beard guards as required by policy.    All food items are cooked and maintained at the proper temperatures for serving to the inmate population. Qualitative and quantitative standards are maintained by the Food Service Department at all times.

Your request is denied.  If you are dissatisfied with the above findings, you may submit a Regional Appeal via Form BP-230(13), to the Northeast Regional Director within twenty calendar days from the date of this response.

Karen F. Hogsten, Warden

Date 2/2/05

Ex -11

Name: LEVI, Bernard
Reg. No. 00283-016
Unit 4A
Page 1

_____

### Inmate Request to Staff Response

This is in response to your letter, dated January 1, 2007, addressed to the Honorable Robert Casey, United States Senator, in which you address many concerns you have regarding the food and beverages served at FCI Allenwood.

You stated you believe all federal institutions are required to serve whole milk with skim milk as an alternative. There is no such requirement. FCI Allenwood has never served whole milk. In the past we have served 2% milk and skim milk. However, in September 2005, the Food Service Administrator decided to only serve skim milk to realize a significant cost savings and to advance the heart-healthy initiatives for all inmates. If you are in fact lactose intolerant as you state, you should not be drinking any milk products because lactose is an ingredient in whole milk, as well as skim milk.

You also state you believe all federal institutions are required to serve Sprite, Coke, and Pepsi on the beverage bar. Again, there is no such requirement. FCI Allenwood supplies beverages which are fortified with Vitamin C and are kosher. Carbonated beverages have no nutritional value. Also, the beverages are not made by FCI Allenwood. They are purchased through a vendor.

You further allege fried eggs are prepared the day before serving, are blue and green in color, and are served cold. Eggs are prepared the day they are being served, and all food items are cooked and maintained at proper temperatures. Incidentally, you are currently on the certified food diet for religious purposes and eggs are not listed on that menu. Consuming anything in Food Service other than the items on the certified food menu would constitute a violation of procedures and result in you being removed from the certified food approval list.

Finally, at no time are male hormone substances placed in the water or food at any Bureau of Prisons facility.

I trust this addresses your concerns.

07 1656

_Jeffrey S. Raleigh, Acting_
Karen F. Hogsten, Warden

_2/26/07_
Date

**FILED**

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 12

**Administrative Remedy Number 439949-A1**
**Part B - Response**

You contend the food service facility at the prison in which you
are currently incarcerated is not operated in a manner consistent
with other federal prisons, and does not comply with the safety,
sanitation and dietary standards of the Bureau of Prisons.

Our review of this matter reveals both the Warden and Regional
Director have adequately addressed your concerns.  A review of
the Warden's response reveals it provides a thorough, point-by-
point discussion of the myriad issues you have presented.  Our
review reveals the food service operation in your prison is in
compliance with Bureau of Prisons' Rules and policy.  If you
believe you have an allergy to a particular food item, you should
address this with medical staff.

This response is for informational purposes only.

May 29, 2007
Date

Harrell Watts, Administrator
National Inmate Appeals

07 1656

FILED

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 13

Returned Mail # 00283-016 4A
Re: Atkenwood P.O. Box 200
White Deer, Pa 17887

Legal Mail
3/12/07

(1st Postage Attached)

Legal Mail

To: Mr. Larry Frankel, Esq
American Civil Liberties
Union, P.O. Box 1161
Philadelphia, Pa 19105-
1161

ACLU151    RETURN TO SENDER
: ACLU    191 N1 005 C 75-03/25/

BOX CLOSED
UNABLE TO FORWARD
RETURN TO SENDER

07 1656

FILED
SEP 2 0 2007
NANCY MAYER WHITTINGTON, CLE
U.S. DISTRICT COURT

19105+1161-617

FWD

ACLU 161

Ex - 14

Ms. Levi,

You certainly have been misinformed on who is opening your mail. I don't know who Miss Parker is, but we at the Post Office do not, and I repeat, (do not) for any reason open anyone's mail.

OIC
WHITE DEER
P.O.

07 1656

**FILED**

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 15

**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

7006 0810 0004 1216 9845

BERNARD LEVI 80283-016 4A

| Postage | $ | 2.33 |
| Certified Fee | | 1.85 |
| Return Receipt Fee (Endorsement Required) | | 2.40 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 6.50 |

Postmark Here

Sent To Honorable Congressman Peter King
Street, Apt. No.; or PO Box No. C Kong, U.S. House of
City, State, ZIP+4 Representative, Wkith, D.C.
20515

See Reverse for Instructions

PS Form 3800, June 2002

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

7006 2150 0004 7651 1322

BERNARD LEVI 80283-016 UNIT 4A

| Postage | $ | 97 |
| Certified Fee | | 2.40 |
| Return Receipt Fee (Endorsement Required) | | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 5.22 |

Postmark Here
MAY 11 2007

Sent To Rep. James E. Clyburn (D, S.C.)
Street, Apt. No.; or PO Box No. U.S. House of Representative
City, State, ZIP+4 WASH. D.C. 20515

See Reverse for Instructions

PS Form 3800, August 2006

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

7006 2150 0004 7651 1339

BERNARD LEVI 80283-016 /UNIT 4A

| Postage | $ | 1.36 |
| Certified Fee | | 2.65 |
| Return Receipt Fee (Endorsement Required) | | 2.10 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 6.01 |

Postmark Here
WHITE

Sent To Rep. Steny Hoyer (D. MD)
Street, Apt. No.; or PO Box No. U.S. House of Representatives,
City, State, ZIP+4 WASH, D.C. 20515

See Reverse for Instructions

PS Form 3800, August 2006

---

07 1656

**FILED**

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex-16

# FCC/FCI ALLENWOOD COMMISSARY LIST - JULY THRU SEPTEMBER 2007

INMATE NAME *(PRINT)*_____    NUMBER_____    UNIT_____

**COMMISSARY HOURS:** 10:30 AM UNTIL LAST CALL FOR THE NOON MEAL, AND AFTER 4PM COUNT UNTIL LAST CALL.  ALL SLIPS MUST BE SUBMITTED BY 6:15PM.

**SHOPPING SCHEDULE: MON. 00 THRU 24, TUES. 25 THRU 49, WED. 50 THRU 74, THURS. 75 THRU 99**

Inmates are permitted to shop once per week.  Your shopping day is determined by the last two digits of the first five numbers of your Federal Register Number.  Once your form has been submitted no additions or substitutions may be made to your list.  DO NOT LEAVE THE COMMISSARY ONCE YOU'VE TURNED IN YOUR LIST!!  It is YOUR RESPONSIBILITY to check the Commissary bulletin board for out-of-stock items, new items, and any additional rules pertaining to Commissary.  All prices are subject to change without notice and all sales are final!!!  Your list should be filled out clearly and uniformly.  If we can not read your list, we will not fill it!!

**Effective October 2001, lists containing highlighted items will not be accepted.**

## STAMPS (S24.60 Limit)
.41_____.41 Stamp
8.20_____.41 Stamp Book
.01_____.01 Stamp
.05_____.05 Stamp
.50_____.50 Stamp
7.55_____Copy Card Limit 3
1.00_____Photo Ticket Limit 10
2.35_____CR2016 Watch Battery

## OILS (LIMIT 2 TOTAL)
3.00_____Prayer Oil/SJ
2.75_____Prayer Oil

## ICE CREAM (LIMIT 3 TOTAL)
1.70_____Butter Pecan (k)
1.70_____Chocolate Chip(k)
1.70_____Peach Frozen Yogurt (k)
.70_____P-Nutty Cone (k)
1.00_____Mango Frozen Fruit Bar (k)

## SODA (LIMIT 4/6 pks)
2.05_____Sprite
2.05_____Coca Cola
2.05_____Fanta Orange
2.05_____Diet Coke

## JUICE & WATER (LIMIT 24 TOTAL)
.65_____100% Orange Juice
.40_____Bottled Water

## BATTERIES (LIMIT 4 EACH)
1.85_____AAA Battery
1.85_____AA Battery

## MISCELLANEOUS ITEMS (LIMIT 2 EACH)
.55_____Greeting Cards (10)
.45_____Toothbrush Case
.65_____Soap Dish
3.45_____Pocket Dictionary
1.55_____Dental Floss
1.90_____Denture Bath Cup
1.10_____Shoe Laces White or Black
2.40_____Wave Caps Doo-Rag
6.50_____Sunglasses
1.25_____Styling Brush
.80_____7" Comb
.75_____Afro Pick
.35_____Palm Brush
2.80_____Boar Palm Brush
2.30_____Comfort Plus Insoles (pair)
1.10_____Toe Nail Clipper
1.10_____Tweezers
6.45_____Safety Scissors
1.90_____Bic Razors, 6pk.
4.80_____Triple Blade Razor
3.40_____Triple Blades, 4pk
6.50_____Gillette Sensor Blades, 5pk (d)
3.40_____Mouthpiece (d)
9.65_____Alarm Clock
1.05_____Black Pony Tailers
1.80_____Black Shoe Polish
10.55_____Watch Band (Timex)
1.90_____Sewing Kit
2.10_____Watch Band-Velcro
10.15_____Sony Ear Buds

## SOLD DURING DAILY SALES (limit 1 EACH)
32.45_____Koss Headphones
55.25_____Nike Overplay 3
55.25_____Nike Dime Dropper
50.05_____Adidas Ketchikan
25.05_____Nike Sandal
36.55_____Timex Ironman Watch
20.15_____Calculator
39.00_____Sony Digital Radio
44.10_____Sangeon DT-110 Radio (d)
4.70_____Racquet Balls
2.20_____Acrylic Mirror
1.10_____Cotton Swabs, 100 ctn.
.60_____Soft Stick Pen
.50_____#2 Pencils, 4 pk
1.55_____Playing Cards
1.65_____Pinochle Cards
.70_____Address Book
.75_____Handkerchief
.15_____Legal Envelopes (10)
.50_____Pocket File Folders (2)
1.25_____Envelopes
1.60_____Wireless Notebooks
.90_____Writing Pads (d)
8.30_____Lift Off Correction Tape
7.60_____Typewriter Ribbons
5.95_____Masterlock Combo Lock
11.60_____Book Light
3.00_____Book Light Bulb, 2 pk.
2.25_____Dr. Scholl Corn Cushions
11.40_____Arch Support, sz: 3  4  5
1.95_____Kleenex Tissues (d)
3.90_____Mini Photo Album
4.45_____Microwave Bowl
1.85_____Clear Plastic Mug
2.35_____Shaker, Quart

## TOILETRIES (LIMIT 2 EACH)
2.10_____Suave 2n1 Shampoo/Conditioner
1.45_____VO5 Shampoo
1.45_____VO5 Conditioner
6.70_____Neutrogena T-Gel Shampoo
3.70_____Dandrex Shampoo
5.70_____Head & Shoulders
2.60_____Styling Gel
1.90_____Royal Crown
2.55_____Proline Hair Food
2.30_____Coconut Oil Conditioner
5.00_____Pink Luster Moisturizer
5.70_____Artra Skin Cream
2.35_____Murray's Pomade
6.30_____African Pride Magical Gro
4.50_____Sulfur 8 Medicated Conditioner
.90_____Colgate Toothbrush - Soft
.90_____Colgate Toothbrush - Medium
.50_____Toothbrush - Soft
.50_____Toothbrush - Medium
2.30_____Close-Up Toothpaste
2.90_____Colgate Total Toothpaste
3.60_____Magic Shave Cream
3.30_____Bump Control

3.20_____Foot Powder
1.85_____Baby Powder
1.30_____Talc Powder
1.10_____Petroleum Jelly
1.95_____Shaving Lather
2.35_____Afta Aftershave
2.05_____Suave Aloe Vera Lotion
2.15_____Cocoa Butter Cream
1.45_____Vitamin E Cream
4.35_____Jergen's Lotion
2.60_____Old Spice Deodorant (d)
1.45_____Roll-On Deodorant
2.60_____Sure Regular Deodorant
1.70_____Noxema 2.5 oz
6.20_____Sensodyne Toothpaste (k)
3.85_____St. Ives Apricot Cleanser (d)
1.55_____Cocoa Butter Stick
4.95_____Charmin Toilet Paper, 4pk
.75_____Irish Spring, Icy Blast
.90_____Tone Soap
.70_____Dial Antibacterial Soap
.50_____Ivory Soap (k)

## SUNDRY (LIMIT 1 each)
1.05_____3pc Utensil Set

## MEDICINE (LIMIT 2 EACH)
3.50_____Neutrogena Soap
1.35_____Mint Mouthwash
1.90_____Acne Treatment
2.15_____Artificial Tears Eye Drops
3.75_____SPF30 Sunscreen Lotion
3.50_____Denture Toothpaste
3.00_____Oral B Denture Brush
4.85_____Effergrip Denture Adhesive
1.65_____Halls Menthol Lyptus Cough Drops
1.85_____Ear Drops
.50_____Certs, Spearmint (limit 5 ea.)
1.30_____Aspirin
2.00_____Medicated Chest Rub
1.05_____Allergy Tablets
1.55_____Loratadine, 10mg (like Claritin)
1.70_____Tylenol (generic)
2.35_____Advil (generic)
5.60_____Aleve
1.40_____Chapstick
1.60_____Antifungal Medicated Foot Cream
13.30_____Lamisil Foot Cream
4.20_____1% Medicated Foot Powder
.80_____Rolaids
17.65_____Prilosec
2.15_____Zantac
5.20_____Lactase Tablets
5.40_____Fiber Laxative
7.35_____Immodium
1.95_____Pepto Bismuth
2.40_____Milk of Magnesia
3.35_____Antacid w/ Simethicone
2.15_____Muscle Rub
1.75_____Cough Syrup 4 oz
2.15_____Oral Gel

07 1656

FILED
SEP 2 0 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

3.55_____ Hemorrhoidal Cream
6.00_____ Tucks Medicated Pads
1.45_____ Hydrocortisone Cream
2.10_____ Antibiotic Ointment
1.80_____ Saline Nasal Spray
2.05_____ Vitamin C
3.25_____ Vitamin E
3.75_____ Centrex Multi Vitamin
2.50_____ Calcium

*CLOTHING, Circle Size!!! (LIMIT 2 EACH*

11.05_____ Dazzle Shorts, XL 2XL 3XL
13.00_____ Dazzle Shorts, 4XL 5XL
7.80_____ Thermal Shirts XL (*)
7.80_____ Thermal Pants XL (*)
9.10_____ Thermal Pants 2X 3X (*)
9.10_____ Thermal Shirts 2X 3X (*)
1.60_____ Winter Caps - Gray
5.20_____ Scarfs - Gray
3.55_____ Winter Gloves - Gray
8.15_____ Gold Toe Socks, 3 pk (Lg)
8.80_____ Gold Toe Socks, 3 pk (XL)
4.45_____ Shower Shoes SZ: MD LG XL 2X
8.45_____ Boxer Briefs MD LG XL
3.90_____ Athletic Support MD LG XL
4.20_____ T-Shirts, Gray LG XL 2X 3X
9.40_____ T-Shirts, Gray 4X 5X
11.05_____ T-Shirts, Gray 6X
14.20_____ Sweat Shirts, LG XL 2X 3X 4X
23.10_____ Sweat Shirts, 5X 6X
14.20_____ Sweat Pants, LG XL 2X 3X 4X
23.10_____ Sweat Pants, 5X
5.85_____ Baseball Caps - White
6.20_____ Towels, Beige
2.60_____ Wash Cloths, Beige

*LAUNDRY SUPPLIES (LIMIT 2 EACH)*

4.90_____ Tide, No Bleach (k)
1.60_____ Trend Detergent (d)
1.55_____ Ajax Dishwashing Liquid
2.40_____ Bounce Dryer Sheets

*COOKIES & CRACKERS*

2.05_____ Cheese-it Crackers (2)(k)
1.45_____ Fig Bars, Low Fat (2) (k)☺
1.05_____ Chocolate Crm Cookies (2) (k)(d)
1.05_____ Peanut Butter Crm Cookies (2) (k)
1.80_____ Honey Graham Crackers (2)
2.60_____ Ritz Crackers (2) (k)
2.25_____ Low Salt Saltines (2) (k) ☺
1.25_____ Vanilla Wafers (2) (k)
3.15_____ Chewy Granola Bars

*COFFEE & TEA (LIMIT 2 EACH)*

5.55_____ Folgers Coffee (k)
1.80_____ Tea Bags, 48/Ct (k)
3.20_____ Espresso
3.10_____ Decaf Coffee (k)
2.75_____ Colombian Coffee (k)
1.25_____ Carnation Creamer

*MEAT PRODUCTS (LIMIT 10 EACH)*

1.85_____ Pepperoni
1.25_____ Hot Salami Sausage
2.05_____ Beef Sausage
2.10_____ Honey Pepper Turkey Log
2.10_____ White Chicken, 3 oz.
1.35_____ Salmon (k)
1.20_____ Mackerel Fillets (k)
1.15_____ Bumble Bee Light Tuna (k) ☺
1.60_____ Bumble Bee White Tuna (k)☺
.90_____ Fish Steaks in Hot Sauce (k)(d)
1.70_____ Chicken Vienna Sausage

*MISC. FOODS (LIMIT SEE BELOW)*

2.10_____ Sugar Twin (3) (k)☺
1.40_____ Sugar (3)

_____ Coconut (2) (k)
_____ Hot Sauce (3) (k)
1.05_____ Chili Garlic Sauce (2) (k)
1.85_____ Jalapeno Peppers (3) (k)
1.30_____ Goya Sazon (k)
1.30_____ Salt & Pepper (1)
2.75_____ Mrs. Dash Seasoning (k)
3.50_____ Lg Seasoning Set (1)
.70_____ Kosher Dill Pickle (k)
.85_____ Mustard (2) ☺
2.80_____ Mayonnaise (2) (k)
3.35_____ Oatmeal Variety Pack (3) (k) ☺
3.80_____ Granola Honey & Oats (3) (k)
2.50_____ Toastie O's Cereal (3) (k) ☺
2.35_____ Berry Colossal Crunch Cereal (3) (k)
1.65_____ Refried Beans w/ chili & spices (5) (k)
.50_____ Velveeta Spicy Rice w/ Cheese (20)
4.75_____ Chicken & Noodles (k) (5)
4.65_____ Beef Stew (k) (5)
3.85_____ Vegetable Stew (k) (5)
4.05_____ Pasta/Garden Vegetable (k) (5)
2.95_____ Pizza Kits (5)
2.45_____ Welch's Grape Jelly (3)
2.05_____ Strawberry Jam (3)
2.00_____ Peanut Butter (3) (k)
1.10_____ Hot Chili W/Beans (10)
.90_____ Instant Rice (20) (k) ☺
3.90_____ Carnation Dry Milk (3) (k)

*HEALTH FOODS (LIMIT SEE BELOW)*

.45_____ Garlic (10) ☺
2.25_____ Honey (5)(k)☺
2.50_____ Olive Oil (2) (k)
.70_____ Marinara Sauce (10)
.65_____ Lemon Juice (2) (k) ☺
1.60_____ Organic Rolled Oats (5) (k) ☺
.90_____ Brown Rice (20) (k) ☺
2.75_____ Prunes (5) (k) ☺
2.85_____ Dates (5) (k) ☺
2.35_____ Dried Apricots (5) (k) ☺

*DRINK MIX (LIMIT SEE BELOW)*

.30_____ Crystal Light Lemonade (10)☺
.90_____ Gatorade(10)
1.90_____ Tang (k)(2)
1.95_____ Nestea Ice Tea Mix(2)
1.85_____ Country Time Lemonade (k)(2)
1.60_____ Hot Cocoa Mix (k)(2)

*SOUPS (LIMIT 24 TOTAL)*

.15_____ Hot & Spicy Vegetable
.15_____ Texas Beef
.15_____ Roast Chicken
.15_____ Chili

*CANDY & SNACKS (LIMIT 5 EA)*

.50_____ Sugar Free Candy ☺
.50_____ Fruit Snacks ☺
.55_____ Berry Skittles
1.45_____ Jolly Rancher's
.55_____ Hershey Bar (k)
1.80_____ Hershey Bar w/ Almonds (k)
3.35_____ Butterfinger/6 pk (limit1)
3.35_____ Snickers/6 pk (limit 1)
1.10_____ Kit Kat Candy Bar(k)
1.00_____ Royal Mix Hard Candy
1.00_____ Starlight Mint Candy
2.30_____ Peanut M&M's (k)
2.30_____ Plain M&M's (k)
1.80_____ Fat Free Popcorn, 3 pk (k) ☺
1.80_____ Buttered Popcorn, 3 pk (k)

*CHEESE (LIMIT 5 EACH)*

1.45_____ Sharp Cheese Spread (d)
.35_____ Cream Cheese
2.35_____ Velveeta Cheese

1.85_____ Grated Cheese

*NUTS, SNACK MIXES (LIMIT 5 EACH)*

.95_____ Raw Almonds, 8 oz. ☺
2.85_____ Unsalted Peanuts, 16oz ☺
3.45_____ Sweet/Savory/Tart Mix, 15 oz.

*BREAD (LIMIT 5 )*

.70_____ Tortillas, 4pk (k)
.50_____ Bagel (k0

*PASTRIES (LIMIT 10 EACH)*

.65_____ Iced Cinnamon Roll (k)
.70_____ Mega Honey Buns (k)
.65_____ Chocolate Donut (k)

*CHIPS & PRETZELS (LIMIT 5 TOTAL)*

1.00_____ Regular Chips (k)
1.00_____ Sourcream/Onion Chips (k)
1.00_____ Nachos (k)
1.00_____ Cheese Puffs (k)
1.85_____ Pretzels (k)
2.20_____ Tortilla Chips (k)
1.05_____ BBQ Pork Rinds
2.20_____ Party Mix (k)

*FRUIT (LIMIT 3 BAGS TOTAL)*

CMC_____ Bananas 5/Bg

*DISCONTINUED, SOLD WHILE SUPPLIES LAST. (UNLIMITED)*

26.00_____ Timex Easy Reader Watch (1)
1.90_____ Comb/Brush Set
5.15_____ Gray Mesh Bags
.85_____ Beef Stick/Cheese Combo
3.45_____ Sweet n Salty Mix, 16 oz
7.15_____ Ankle Socks, 3 pk (Lg)
7.80_____ Ankle Socks, 3 pk (XL)

*NEW ITEMS/WRITE-IN ITEMS*
(CHECK COMMISSARY LOBBY BULLETIN BOARD)

_____
_____
_____
_____
_____

APPROVED:

pending signature _____ WARDEN
Karen F. Hogsten

## NO REFUNDS OR EXCHANGES!
## ALL SALES ARE FINAL !!!

*Items marked with an (\*) are sold locally only. They are not authorized for transfer throughout the Federal Bureau of Prisons*

*Items marked with a (k), are Kosher/Halal*

*Items marked with a (d) are discontinued*

*Items marked with an (☺) are healthy items (ie: low fat and/or low salt)*

Ex - 17

ASE Washington v. Lappin

# Survivors' suit

Federal lawsuit seeking $43.75 million filed over 1993 shooting rampage at Fort Knox

Page C3

# Lexington lawyer negotiates deal over inmate phone suit

LOCAL NEWS

LEXINGTON HERALD-LEADER

FILED

SEP 20 07

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

SATURDA
August 5, 19
Lexington, K

## ASSOCIATED PRESS

A federal judge approved a settlement yesterday between the federal Bureau of Prisons and inmates on telephone policies that had threatened to curtail inmates' right to make calls.

The settlement, negotiated by Lexington attorney Douglas McSwain on behalf of federal prisoners nationwide, could cost the government up to $22 million, thought to be one of the largest victories for prisoners against the federal government.

"We have accomplished every major goal that we set out to achieve when we started this lawsuit," said McSwain. The Bureau of

Prisons, known as BOP, "has been caught with its hand in the inmates' cookie jar."

U.S. District Judge Henry Wilhoit Jr. said he was upset about the bureau taking money from the installation of new telephone systems at federal prisons nationwide that would restrict inmates' right to make calls.

Commissary Trust Fund, which contains money sent to prisoners from their families, and using it to pay for the new phone system and to help finance the trust fund for supervisors' salaries and benefits.

He told the government it was smart to settle.

"I have held and will hold that the plaintiffs were the prevailing party — big time." Wilhoit said.

The suit, which originated

more than two years ago with inmates at the Federal Medical Center in Lexington, challenged the federal prisons' new policies and installation of new telephone systems nationwide using millions of dollars from the trust fund established by Congress during the 1990s solely for inmate-welfare items such as cable television, books and sports equipment.

The new direct-dial telephone service meant inmates could no longer make collect calls. Instead, they had to buy direct-dial credits at the prison commissary once a week.

Inmates contended the debit system discriminated against penniless prisoners.

Before being stopped by an injunction from Wilhoit in October

1993, the bureau had installed the debit phone system in 39 of the 72 inmates could be up to $25 million, McSwain said.

Also under the settlement, all prisoners will be guaranteed 120 minutes a month in collect calling privileges. Poor prisoners will be guaranteed 60 minutes a month of debit calling privileges if they meet the financial requirements.

By using money from the inmates' fund the bureau was able to pay for the system without going to Congress.

As part of the settlement, the bureau will immediately pay $4 million into the Inmate Welfare Fund to repay the money spent on installing the system.

The amount the government

will have to pay back to the inmates could be up to $25 million, McSwain said.

Also under the settlement, all prisoners will be guaranteed 120 minutes a month in collect calling privileges. Poor prisoners will be guaranteed 60 minutes a month of debit calling privileges if they meet the financial requirements.

The next step in the case is to take the settlement to the prisoners for their approval. Without scheduled a fairness hearing in November on the agreement.

Bureau attorneys said they could not comment on the agreement.

# Watchdog agency wasn't told of state stance on Pike schools

## BY LEE MUELLER
EASTERN KENTUCKY BUREAU

PIKEVILLE — The Kentucky Department of Education did not

The state education department

condition.

Pike superintendent Ron Johns held a news conference Wednesday morning and distributed copies of a letter from Deputy Education Com-



Ex - 18

Administrative Remedy No. 441014-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal in which you complain staff at FCI Allenwood allow inmate
clerks to copy other inmates' legal documents.  In addition, you
state the cost to purchase a copier card is too high and more
than other institutions.

Our review reveals the Warden and Regional Director adequately
responded to the issues you raised in your appeal.  As indicated
by the Regional Director, there are two copy machines in the Law
Library at FCI Allenwood available to you.  You can either make
your own copies on the machine located out front or have the Law
Library clerk make them for you on the copy machine located
inside the Law Library.  When the Law Library Clerk makes the
copies, the inmate is present and all documents to be copied are
immediately returned.

The cost of the copy machine card is based on a cost analysis
report and several factors are considered, therefore the cost
varies for each institution.  If you are without funds, we
encourage you to contact a member of your Unit Team to make
arrangements to make legal copies.

Your appeal is denied.


_____
June 5, 2007
Date

_____
Harrell Watts, Administrator
National Inmate Appeals

07 1656

**FILED**

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 19

nine if the content originated with the inmate sender identified on the letter or package; to prevent the transmission of material, substances, and property which an inmate is not permitted to possess in the institution; and to determine that the mail was not opened or tampered with before its return to the institution. Any remailing is at the inmate's expense. Any returned mail qualifying as "special mail" is opened and inspected for contraband in the inmate's presence.

**540.25 Change of address and forwarding of mail for inmates.**

(a) Staff shall make available to an inmate who is being released or transferred appropriate Bureau of Prisons and U.S. Postal Service forms for change of address.

(b) Inmates are responsible for informing their correspondents of a change of address.

(c) Postage for mailing change of address cards is paid by the inmate.

(d) Except as provided in paragraphs (b) through (g) of this section, all mail received for a released or transferred inmate will be returned to the U.S. Postal Service for disposition in accordance with U.S. Postal Service regulations.

(e) Staff shall use all means practicable to forward special mail.

(f) Staff shall forward inmate general correspondence to the new address for a period of 30 days.

(g) Staff shall permit an inmate released temporarily on writ to elect either to have general correspondence held at the institution for a period not to exceed 30 days, or returned to the U.S. Postal Service for disposition.

(1) If the inmate refuses to make this election, staff at the institution shall document this refusal, and any reasons, in the inmate's central file. Staff shall return to the U.S. Postal Service any general correspondence received for such an inmate after the inmate's departure.

(2) If the inmate does not return from writ within the time indicated, staff shall return to the U.S. Postal Service any general correspondence being held for that inmate for disposition in accordance with postal regulations.

## Subpart C [Reserved]

## Subpart D—Visiting Regulations

SOURCE: 45 FR 44232, June 30, 1980, unless otherwise noted.

### §540.40 Purpose and scope.

The Bureau of Prisons encourages visiting by family, friends, and community groups to maintain the morale of the inmate and to develop closer relationships between the inmate and family members or others in the community. The Warden shall develop procedures consistent with this rule to permit inmate visiting. The Warden may restrict inmate visiting when necessary to ensure the security and good order of the institution.

[45 FR 44232, June 30, 1980, as amended at 58 FR 39095, July 21, 1993]

### §540.41 Visiting facilities.

The Warden shall have the visiting room arranged so as to provide adequate supervision, adapted to the degree of security required by the type of institution. The Warden shall ensure that the visiting area is as comfortable and pleasant as practicable, and appropriately furnished and arranged. If space is available, the Warden shall have a portion of the visiting room equipped and set up to provide facilities for the children of visitors.

(a) Institutions of minimum and low security levels may permit visits beyond the security perimeter, but always under supervision of staff.

(b) Institutions of medium and high security levels, and administrative institutions may establish outdoor visiting, but it will always be inside the security perimeter and always under supervision of staff.

[45 FR 44232, June 30, 1980, as amended at 51 FR 26127, July 18, 1986; 56 FR 4159, Feb. 1, 1991]

### §540.42 Visiting times.

(a) Each Warden shall establish a visiting schedule for the institution. At a minimum, the Warden shall establish visiting hours at the institution on Saturdays, Sundays, and holidays. The restriction of visiting to these days may be a hardship for some families

and arrangements for other suitable hours shall be made to the extent practicable. Where staff resources permit, the Warden may establish evening visiting hours.

(b) Consistent with available resources, such as space limitations and staff availability, and with concerns of institution security, the Warden may limit the visiting period. With respect to weekend visits, for example, some or all inmates and visitors may be limited to visiting on Saturday or on Sunday, but not on both days, in order to accommodate the volume of visitors. There is no requirement that every visitor has the opportunity to visit on both days of the weekend, nor that every inmate has the opportunity to have visits on both days of the weekend.

[51 FR 26127, July 18, 1986]

### §540.43 Frequency of visits and number of visitors.

The Warden shall allow each inmate a minimum of four hours visiting time per month. The Warden may limit the length or frequency of visits only to avoid chronic overcrowding. The Warden may establish a guideline for the maximum number of persons who may visit an inmate at one time, to prevent overcrowding in the visiting room or unusual difficulty in supervising a visit. Exceptions may be made to any local guideline when indicated by special circumstances, such as distance the visitor must travel, frequency of the inmate's visits, or health problems of the inmate or visitor.

### §540.44 Regular visitors.

An inmate desiring to have regular visitors must submit a list of proposed visitors to the designated staff. See §540.45 for qualification as special visitor. Staff are to compile a visiting list for each inmate after suitable investigation in accordance with §540.51(b) of this part. The list may include:

(a) *Members of the immediate family.* These persons include mother, father, step-parents, foster parents, brothers and sisters, spouse, and children. These individuals are placed on the visiting list, absent strong circumstances which preclude visiting.

707 1656   **FILED**

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK

Ex-20

I, SCHUYLKILL
6/10/02

INMATE's APPROVED VISITING LIST

G.#: 00283-016

NAME: LEVI, BERNARD

UNIT : UNIT 3A

## APPROVED VISITORS

| #. | LAST NAME | FIRST | RELATIONSHIP | CITY | STATE | ZIP |
|----|-----------|-------|--------------|------|-------|-----|
| 1. | WARING | ELLEN | Sister | WASHINGTON | DC | 20001- |
| 2. | WARING | MAUREEN | Sister | WASHINGTON | DC | 20001- |
| 3. | VENSON | BRANDI | Daughter | ROCKY MOUNT | NC | 27801- |
| 4. | VENSON | DENISE | Babys mom | FREDRICK | MD | 20678- |
| 5. | LEVI | BERNARD | Father | WASHINGTON | DC | 20019- |
| 6. | LEVI | DARLENE | Sister | WASHINGTON | DC | 20024- |

VERIFIED BY : _____

07 1656

# FILED

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 21

FCI, SCHUYLKILL
11/14/02

INMATE's  APPROVED  VISITING  LIST

REG.#: 00283-016

NAME: LEVI, BERNARD

UNIT : UNIT 3A

APPROVED  VISITORS

| #. | LAST NAME | FIRST | RELATIONSHIP | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| 1. | WARING | ELLEN | Sister | WASHINGTON | DC | 20001- |
| 2. | WARING | MAUREEN | Sister | WASHINGTON | DC | 20001- |
| 3. | VENSON | BRANDI | Daughter | ROCKY MOUNT | NC | 27801- |
| 4. | VENSON | DENISE | Babys mom | FREDRICK | MD | 20678- |
| 5. | LEVI | BERNARD | Father | WASHINGTON | DC | 20019- |
| 6. | LEVI | DARLENE | Sister | WASHINGTON | DC | 20024- |
| 7. | SNIPE | MAURICE | Bro in law | WASH | DC | 20024- |

VERIFIED BY : _____

07 1656

FILED

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex-22

Common Law Marriage in Pennsylvania                                    Page 1 of 1

Powered by
MYLAWYER.COM
THE LAW YOU CAN AFFORD

CLIENT LOGIN
Username [        ]
Password [        ]   [log]
Register | Password Help

Home   About Us   Services   Policies   Support   Law Guide   Site Map       PADIVORCEONLINE

Customer Support
Legal Advice

Would you like to bookmark this site? Click here.

## Common Law Marriage in Pennsylvania is no longer valid prospective to recent court decision.

Pennsylvania was one of the very few states that recognized a common law marriage. In a recent PA court decision, the court overruled the concept of common law marriage prospective to the court decision. Marriages that qualified prior to the court decision as valid are still valid. For a complete analysis, click here for the court decision. A "common law marriage" is one in which the parties may hold themselves out as a husband and wife, and under certain circumstances, be deemed married without a marriage license or ceremony.

Article content ©2004, 2005 Richard Granat

Copyright ©2004, 2005 by MyLawyer.com®, Inc.
All Rights Reserved
The web site is operated by:

MYLAWYER.com

a subsidiary of Epoc. US, Inc.
Legal Documents That Think™ is a trademark of Epoq.co.uk
Law That You Can Afford
For additional information,
E-mail: support@padivorceonline.com
or call: 1-800-311-6123
Web Masters: Join Our Affiliate Program.
This site was last revised on: 12/07/2004
We are not a law firm; we do not give legal advice from this web site.
Serving the pro se divorce community since 1997

*Such 43*

*Cite 831 A.2d 1269 (P.A. (comm th 2003)*

*PNC Bank Corporation*                    07 1656

*v.*

*Workers Compensation*   FILED

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 23

ALM 5360.09
Attachment 2

## DEATH / SERIOUS ILLNESS NOTIFICATION FORM

Inmate's
Name: _Levi, Bernard_

Register No.: _00283-016_    Unit: _4-A_

Name of Person
Calling: _Suzie Balock_

Relationship to Inmate: _Death Care coordinator Duke Medical Center_

Phone Number(s) where they can be contacted: _919-681-6264_

## FOR DEATH NOTIFICATIONS COMPLETE THE FOLLOWING:

Name of deceased: _Brandi Nicol Venson_
Name of funeral home or hospital for verification: _____
Location: _____
Phone No.: _____
Relationship to inmate: _daughter_
Cause of death: _Leukemia_
Date of funeral: _____    Time: _900 - time notified_
Location: _____

## FOR NOTIFICATION OF SERIOUS ILLNESS COMPLETE THE FOLLOWING:

Name of ill person: _____
Name of hospital: _____
Location: _____    Phone: _____
Relationship to inmate: _____
Nature of Illness: _____
Prognosis or Seriousness: _____

================================================

### OFFICE USE ONLY

Time of Call: _4.00 pm_    Date: _5-4-07_
Officer's name/signature: _Neal Milligan    Paul Medley_
Verification Time: _4.15 pm_    Date: _5-4-07_
Name/Signature: _Paul Medley_    07 1656
Notified by: _Neal Milligan    Chaplain_

Date: _5-4-07_    Time: _5 50 pm_

NOTES: _____

**FILED**

SEP 20 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 24

Name: Levi, Bernard
Reg. No. 00283-016
Unit 4A
Page 1

---

### Inmate Request to Staff Response

This is in response to your Inmate Request to Staff dated
May 7, 2007, in which you inform staff that your daughter had
passed away on May 4, 2007. In your request, you have not sought
any remedy nor have you stated any complaint.

You and your family have my condolences in the passing of your
daughter. Please be aware that the Chaplain and Psychology staff
are available to you during your time of grief.

I trust this response addresses your concerns.


_____                    _____
Karen F. Hogsten, Warden                         Date


07 1656


**FILED**

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 25

U.S. Department of Justice
Federal Correctional Institution
Allenwood Federal Correctional Complex
White Deer, PA 17887

REQUEST FOR ADMINISTRATIVE REMEDY
PART B - RESPONSE

NAME: LEVI, Bernard
REG. NO.: 00283-016
REMEDY ID: 445106-F1

This is in response to your administrative grievance dated
February 16, 2007.  In your grievance you state that your
daughter, Brandi Venson, has improperly been denied visitation
privileges.  You state that the information contained in your
Pre-Sentence Investigation Report (PSI) is incorrect, as it does
not properly identify Brandi Venson as your daughter.  You
further state your desire to have Denise Venson, whom you state
is the mother of your daughter, to be added as your common-law
wife.  You claim that your Unit Counselor improperly failed to
add them to your visiting list.

A review of your PSI reflects that you have a daughter, Denise
Venson, whose mother is Denise Venson.  Your PSI does not
reference anyone named Brandi Venson.  Further, the PSI does not
support your contention that Ms. Venson is your common-law wife.
As noted, your PSI indicates that Denise Venson is the mother of
Denise Venson, your daughter.  Institution Supplement 5267.07C,
<u>Visiting Regulations</u>, provides that "all visitors to include
immediate family must submit a visiting form to their assigned
Unit Team" and that "Unit Team staff will conduct an appropriate
investigation on all visitors."  Therefore, all individuals who
desire to visit must fill out a Visitor Information form (BP-
629).  If you wish to have the individuals that you refer to
added to your visiting list, a Visitor Information form must be
completed for each of them, and returned to the institution for
review and processing.  You can obtain the forms from your Unit
Counselor.

Your request is denied.  If you are dissatisfied with the above
findings, you may submit a Regional Appeal via Form BP-230(13),
to the Northeast Regional Director within twenty calendar days
from the date of this response.

07 1656

**FILED**

Karen F. Hogsten, Warden                    4/24/07   SEP 2 0 2007
                                            Date

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Page 1 of  1

Ex - 26

Washington DC

District of Columbia

Affidavit of Mrs. Darlene Levi-Snipe

I, Mrs. Darlene Levi-Snipe state the forgoing is true and correct pursuant to 28 U.S.C. 1746 under penalty of perjury:

On May 4, 2007 around 6:00 am-7:00 am I called FCI Allenwood where I spoke to Mrs. Darlene Parker via telephone my brother's Bernard S. Levi secretary and explained to her that Ms. Brandi N Venson his daughter had passed away from Leukemia at Duke University Hospital.

On or around May 4, 2007 I called Mr. Harley Lappins Office, The Director of The Federal Bureau of Prisons at his Washington, D.C. office. The call was transferred to his assistant. I explained to Mr. Lappin's assistant that my brother's daughter had died, and that the family was willing to pay transportation fees for him to attend the funeral or wake. I was told that I need to contact the institution that housed him because each institution approves travel arrangement for funerals.

On or after May 7, 2007 I called FCI Allenwood to speak with Mrs. Darlene Parker and I gave Mrs. Parker the information on the funeral arrangements and told her that our family is willing to pay the entire transportation cost so that Mr. Bernard Levi will be able to attend, and that Ms. Brandi Venson was his only child and to let me know what we need to do.

I never received any return call from FCI Allenwood officials concerning this matter, and my brother Mr. Levi indicated to me that no one even contacted him in reference to him being able to attend his only daughter's funeral or wake.

I find the conduct of these officials that are in charge very appalling and unprofessional. It is very upsetting to lose a family member under any condition but to be completely ignored by our pleas to have Mr. Bernard Levi attend his only daughter funeral is not acceptable especially when we was told he could attend. This kind of incident with the correctional institution must be deja'vu because the same thing happen in Dec. 1999 when Mr. Levi's mother passed away. The institution gave us the illusion that he would attend and nothing happen. Furthermore, FCI Allenwood official never contacted me after even receiving all the information pertaining to both deaths and the funeral arrangements.

07 1656

**FILED**

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

The forgoing is true and correct to the best of my knowledge under penalty of perjury pursuant to 28 U.S.C. 1746, on this

_____2_____ day of _____July_____ 2007.


_____Darlene Levi- Snipe_____
Darlene Levi-Snipe


District of Columbia : SS
Subscribed and Sworn to before me
this _2_ day of _July_ , 2007
_Stephanie Payne_
Notary Public, D.C.
My commission expires_10/31/2011_

Witness

Ex- 27

RECEIPT – ADMINISTRATIVE REMEDY

DATE: JUNE 19, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : BERNARD SHELDON LEVI, 00283-016
      ALLENWOOD MED FCI     UNT: UNIT 4A     QTR: D01-104L

THIS ACKNOWLEDGES THE RECEIPT OF THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW:

REMEDY ID      : 445106-A1
DATE RECEIVED  : JUNE 14, 2007
RESPONSE DUE   : JULY 24, 2007
SUBJECT 1      : VISITING LIST
SUBJECT 2      :
INCIDENT RPT NO:

> Mr. Harrell Watts has refused to provide plaintiff
> with a response on July 24,2006. Thus, plaintiff has
> exhausted administrative remedies.

07 1656

July 25,2007

FILED

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 28

§ 541.13

28 CFR Ch. V (7-1-01 Edition)

TABLE 3—PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE—Continued

| Code | Prohibited acts | Sanctions |
|---|---|---|
| | MODERATE CATEGORY | |
| 300 | Indecent exposure | A. Recommend parole date rescission or retardation. |
| 301 | (Not to be used) | B. Forfeit earned statutory good time or non-vested good conduct time up to 25%, or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time sanction may not be suspended). |
| 302 | Misuse of authorized medication | |
| 303 | Possession of money or currency, unless specifically authorized, or in excess of the amount authorized | |
| 304 | Loaning of property or anything of value for profit or increased return | |
| 305 | Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels | B.1. Disallow ordinarily up to 25% (1–14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended). |
| 306 | Refusing to work or to accept a program assignment | |
| 307 | Refusing to obey an order of any staff member (May be categorized and charged as greater severity, according to the nature of the order being disobeyed, e.g., failure to obey an order which furthers a riot would be charged as Code 105, Rioting; refusing to obey an order which furthers a fight would be charged as Code 201, Fighting; refusing to provide a urine sample when charged as Code 110 | C. Disciplinary segregation (recommend). |
| 308 | Violating a condition of a furlough | D. Disciplinary Transfer (recommend). |
| 309 | Violating a condition of a community program | E. Make monetary restitution. |
| 310 | Unexcused absence from work or any assignment | F. Withhold statutory good time. |
| 311 | Failing to perform work as instructed by the supervisor | G. Loss of privileges: commissary, movies, recreation, etc. |
| 312 | Insolence towards a staff member | H. Change housing (quarters). |
| 313 | Lying or providing a false statement to a staff member | I. Remove from program and/or group activity. |
| 314 | Counterfeiting, forging or unauthorized reproduction of any document, article of identification, money, security, or official paper (May be categorized in terms of greater severity according to the nature of the item being reproduced, e.g., counterfeiting release papers to effect escape, Code 102 or Code 200) | J. Loss of job. |
| 315 | Participating in an unauthorized meeting or gathering | K. Impound inmate's personal property. |
| 316 | Being in an unauthorized area | L. Confiscate contraband. |
| 317 | Failure to follow safety or sanitation regulations | M. Restrict to quarters. |
| 318 | Using any equipment or machinery which is not specifically authorized | N. Extra duty. |
| 319 | Using any equipment or machinery contrary to instructions or posted safety standards | |
| 320 | Failing to stand count | |
| 321 | Interfering with the taking of count | |
| 323 | (Not to be used) | |
| 324 | (Not to be used) | |
| 325 | Gambling | |
| 326 | Preparing or conducting a gambling pool | |
| 327 | Possession of gambling paraphernalia | |
| 328 | Unauthorized contacts with the public | |
| 329 | Giving money or anything of value to, or accepting money or anything of value from, another inmate, or any other person without staff authorization | |
| 330 | Being unsanitary or untidy; failing to keep one's person and one's quarters in accordance with posted standards | |

516

TABLE 3—PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE—Continued

Bureau of Prisons, Justice

| Code | Prohibited acts | Sanctions |
|---|---|---|
| | LOW MODERATE CATEGORY | |
| 331 | Possession, manufacture, or introduction of a non-hazardous tool or other non-hazardous contraband (Tool not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety; Other non-hazardous contraband includes such items as food or cosmetics) | B.1. Disallow ordinarily up to 12.5% (1–7 days) of good conduct time credit available for year (to be used only where inmate has not committed a second prohibited act within 6 months); Disallow ordinarily up to 25% (1–14 days) of good conduct time credit available for year (to be used only where inmate has committed a second prohibited act during year where the inmate was found to have committed a third or more prohibited acts during year) (a good conduct time sanction may not be suspended). |
| 332 | Smoking where prohibited | |
| 397 | Use of the telephone for abuses other than criminal activity (e.g., conference calling, possession and/or use of another inmate's PIN number, three-way calling, providing false information for preparation of a telephone list) | |
| 398 | Interfering with a staff member in the performance of duties. (Conduct must be of the Moderate Severity nature). This charge is to be used only when another charge of moderate severity is not applicable. | F. Make monetary restitution. |
| 399 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (Conduct must be of the Moderate Severity nature). This charge is to be used only when another charge of moderate severity is not applicable. | G. Withhold statutory good time. |
| 400 | Possession of property belonging to another person | H. Change housing (quarters). |
| 401 | Possessing unauthorized amount of otherwise authorized clothing | I. Remove from program and/or group activity. |
| 402 | Malingering, feigning illness | J. Loss of privileges: commissary, movies, recreation, etc. |
| 403 | (Not to be used) | K. Impound inmate's personal property. |
| 404 | Using abusive or obscene language | L. Confiscate contraband. |
| 405 | (Not to be used) | M. Restrict to quarters. |
| 406 | Tattooing or self-mutilation | N. Extra duty. |
| 407 | Unauthorized use of mail (Restriction, or loss for a specific period of time, of these mail privileges may often be an appropriate sanction. (May be categorized and charged as greater severity according to the nature of the unauthorized use, e.g., for planning, facilitating, committing an armed assault on the institution's secure perimeter, a Code 101 Assault) | O. Reprimand. |
| 408 | Conduct a business | P. Warning. |
| 409 | Unauthorized physical contact (e.g., kissing, embracing) | |
| 497 | Use of the telephone for abuses other than criminal activity (e.g., exceeding the 15-minute limit for telephone calls; using the telephone in an unauthorized area; placing of an unauthorized individual on the telephone list) | |
| 498 | Interfering with a staff member in the performance of duties. (Conduct must be of the Low Moderate Severity nature). This charge is to be used only when another charge of low moderate severity is not applicable. | |
| 499 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (Conduct must be of the Low Moderate Severity nature). This charge is to be used only when another charge of low moderate severity is not applicable. | |

NOTE: Aiding another person to commit any of these offenses, attempting to commit any of these offenses, and making plans to commit any of these offenses, in all categories of severity, shall be considered the same as a commission of the offense itself.

TABLE 4—SANCTIONS

1. Sanctions of the Discipline Hearing Officer (upon finding the inmate committed the prohibited act)

(a) Recommend parole date rescission or retardation. The DHO may make recommendations to the U.S. Parole Commission for retardation or rescission of parole grants. This may require holding fact-finding hearings

FILED
SEP 2 0 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

07  1656

Ex - 29

§ 541.13

## 28 CFR Ch. V (7-1-01 Edition)

Unal authority for suspensions which were earlier imposed by the Inmate Discipline Committee (IDC).

(d) If the Unit Discipline Committee has recommended referral to the Discipline Hearing Officer, the case referral shall include an advisement that the DHO if any intent to revoke the suspension if the DHO finds that the prohibited act was committed. If the DHO then finds that the prohibited act was committed, the DHO shall so ad-

vise the Unit Discipline Committee who may then revoke the previous suspension.

(e) The Unit Discipline Committee or Discipline Hearing Officer may impose increased sanctions for repeated, frequent offenses according to the guidelines presented in table 5.

(f) Sanctions by severity of prohibited act, with eligibility for restoration of forfeited and withheld statutory good time are presented in table 6.

TABLE 3—PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE

The UDC shall refer all Greatest Severity Prohibited Acts to the DHO with recommendations as to an appropriate disposition.

| Code | Prohibited acts | Sanctions |
|------|----------------|-----------|
| | **GREATEST CATEGORY** | |
| 100 | Killing | A. Recommend parole date re-scission or retardation. |
| 101 | Assaulting any person (includes sexual assault) or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or carried out by an inmate) | B. Forfeit earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended). |
| 102 | Escape from escort; escape from a secure institution (low, medium, high security level and administrative institutions); or escape from a minimum institution with violence | |
| 103 | Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act of Greatest Severity, e.g., in furtherance of a riot or escape; otherwise the charge is properly classified Code 218, or 329) | C. Disciplinary Transfer (recommend). |
| 104 | Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive or any ammunition | D. Disciplinary segregation (up to 60 days). |
| 105 | Rioting | E. Make monetary restitution. |
| 106 | Encouraging others to riot | F. Withhold statutory good time (Note—can be in addition to A through D—cannot be the only sanction executed). |
| 108 | Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade) | G. Loss of privileges (Note—can be in addition to A through D—cannot be the only sanction executed). |
| 109 | (Not to be used) | |
| 110 | Refusing to provide a urine sample or to take part in other drug-abuse testing | |
| 111 | Introduction of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 112 | Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 113 | Possession of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 197 | Use of the telephone for abuses other than criminal activity | |
| 198 | Interfering with a staff member in the performance of duties most like another Greatest Severity prohibited act. This charge is to be used only when another charge of Greatest Severity is not applicable. (Conduct must be of the Greatest Severity nature.) | |
| 199 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons (Conduct must be of the Greatest Severity nature.) This charge is to be used only when another charge of Greatest Severity is not applicable | |

514

FILED
...ON, CLERK
...URT

---

## Bureau of Prisons, Justice

TABLE 3—PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE—Continued

| Code | Prohibited acts | Sanctions |
|------|----------------|-----------|
| | **HIGH CATEGORY** | |
| 200 | Escape from unescored Community Programs and activities and Open institutions (minimum) and from outside secure institutions—without violence | A. Recommend parole date rescission or retardation. |
| 201 | Fighting with another person | B. Forfeit earned statutory good time or non-vested good conduct time (up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended). |
| 202 | (Not to be used) | |
| 203 | Threatening another with bodily harm or any other offense | |
| 204 | Extortion; blackmail; protection; Demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing | |
| 205 | Engaging in sexual acts | |
| 206 | Making sexual proposals or threats to another | |
| 207 | Wearing a disguise or mask | |
| 208 | Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure | C. Disciplinary transfer (recommend). |
| 209 | Adulteration of any food or drink | D. Disciplinary segregation (up to 30 days). |
| 210 | (Not to be used) | E. Make monetary restitution. |
| 211 | Possessing any officer's or staff clothing | F. Withhold statutory good time. |
| 212 | Engaging in or encouraging a group demonstration | G. Loss of privileges: commissary, movies, recreation, etc. |
| 213 | Encouraging others to refuse to work, or to participate in a work stoppage | H. Change housing (quarters). |
| 214 | (Not to be used) | I. Remove from program and/or group activity. |
| 215 | Introduction of alcohol into BOP facility | J. Loss of job. |
| 216 | Giving or offering an official a bribe, or anything of value | K. Impound inmate's personal property. |
| 217 | Giving money to, or receiving money from, any person for purposes of introducing contraband or for any other illegal or prohibited purposes | L. Confiscate contraband. |
| 218 | Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00, or destroying, altering, or damaging life-safety devices (e.g., fire alarm) regardless of financial value | M. Restrict to quarters. |
| 219 | Stealing (theft; this includes data obtained through the unauthorized use of communications equipment, or through unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored.) | |
| 220 | Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized and conducted by staff) | |
| 221 | Being in an unauthorized area with a person of the opposite sex without staff permission | |
| 222 | Making, possessing, or using intoxicants | |
| 223 | Refusing to breathe into a breathalyzer or take part in other testing for use of alcohol | |
| 224 | Assaulting any person (charged with this act only when a less serious physical injury or contact has been attempted or carried out by an inmate) | |
| 297 | Use of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls; conference calling; talking in code) | |
| 298 | Interfering with a staff member in the performance of duties most like another High Severity prohibited act. This charge is to be used only when another charge of High Severity is not applicable | |
| 299 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons (Conduct must be of the High Severity nature.) This charge is to be used only when another charge of high severity is not applicable | |

Ex - 30

Case 1:07-cv-01656-UNA    Document 1    Filed 09/20/2007    Page 96 of 111

TABLE 3—PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE—Continued

| Code | Prohibited acts | Sanctions |
|------|-----------------|-----------|
| | **HIGH CATEGORY** | |
| 200 | Escape from unescorted Community Programs and activities and Open Institutions (minimum) and from outside secure institutions—*without* violence | A. Recommend parole dat scission or retardation. |
| 201 | Fighting with another person | B. Forfeit earned statutory time or non-vested goo |
| 202 | (Not to be used) | duct time up to 50% or |
| 203 | Threatening another with bodily harm or any other offense | 60 days, whichever is |
| 204 | Extortion, blackmail, protection: Demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing | and/or terminate or dis extra good time (an good time or good co |
| 205 | Engaging in sexual acts | time sanction may not be |
| 206 | Making sexual proposals or threats to another | pended). |
| 207 | Wearing a disguise or a mask | B.1 Disallow ordinarily bet |
| 208 | Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure | 25 and 50% (14-27 day good conduct time credit able for year (a good co time sanction may not be |
| 209 | Adulteration of any food or drink | pended). |
| 210 | (Not to be used) | C. Disciplinary transfer ommend). |
| 211 | Possessing any officer's or staff clothing | D. Disciplinary segregation |
| 212 | Engaging in, or encouraging a group demonstration | to 30 days). |
| 213 | Encouraging others to refuse to work, or to participate in a work stoppage | E. Make monetary restitutio F. Withhold statutory good t |
| 214 | (Not to be used) | G. Loss of privileges: |
| 215 | Introduction of alcohol into BOP facility | missary, movies, recre |
| 216 | Giving or offering an official or staff member a bribe, or anything of value | etc. H. Change housing (quarter |
| 217 | Giving money to, or receiving money from, any person for purposes of introducing contraband or for any other illegal or prohibited purposes | I. Remove from program a group activity. J. Loss of job. K. Impound inmate's per property L. Confiscate contraband. M. Restrict to quarters. |
| 218 | Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00 or destroying, altering, or damaging life-safety devices (e.g., fire alarm) regardless of financial value | |
| 219 | Stealing (theft; this includes data obtained through the unauthorized use of a communications facility, or through the unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored.) | |
| 220 | Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized and conducted by staff) | |
| 221 | Being in an unauthorized area with a person of the opposite sex without staff permission | |
| 222 | Making, possessing, or using intoxicants | |
| 223 | Refusing to breathe into a breathalyzer or take part in other testing for use of alcohol | |
| 224 | Assaulting any person (charged with this act only when a less serious physical injury or contact has been attempted or carried out by an inmate) | |
| 297 | Use of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls, conference calling; talking in code) | |
| 298 | Interfering with a staff member in the performance of duties. (*Conduct must be of the High Severity nature.*) This charge is to be used only when another charge of high severity is not applicable | |
| 299 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (*Conduct must be of the High Severity nature.*) This charge is to be used only when another charge of high severity is not applicable | |

530

PROPERTY OF
FCI ALLENWOOD
EDUCATION DEPT.

07 1656

FILED
SEP 20 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 31

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BERNARD S. LEVI,                    :    CIVIL ACTION NO. **1:CV-05-1092**
                                    :
              Petitioner            :    (Judge Rambo)
                                    :
       v.                           :    (Magistrate Judge Blewitt)
                                    :
RONNIE HOLT, WARDEN,                :
                                    :
              Respondent            :

## REPORT AND RECOMMENDATION

**I. Background.**

On May 31, 2005, the Petitioner, Bernard S. Levi, an inmate at the Federal Correctional Institution at Schuylkill ("FCI-Schuylkill"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241 with attached exhibits. (Doc. 1).[1] The Petitioner filed an application for leave to proceed *in forma pauperis*. (Doc. 2). We directed service of the Petition on Respondent.[2]  On June 8, 2005, Petitioner filed a Motion to Amend his Habeas Petition. (Doc. 4).

_____

[1] 28 U.S.C. § 2241(c)(3) provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . (3) [h]e is in custody in violation of the Constitution or laws of the United States . . ." Petitioner claims in part that he lost too many good conduct days as a disciplinary sanction, and he seeks the removal of the sanctions including restoration of all of his good time days (i.e. 27 days). Thus, Petitioner has properly brought his claims affecting the length of his confinement in a habeas petition. *See Nelson v. Campbell*, ____ U.S. ____, 124 S.Ct. 2117, 2124 (2004).  However, as discussed below, Petitioner 's injunction motion claims (Docs. 10 & 11) are not core habeas claims cognizable in his habeas corpus petition.

[2] Petitioner names as the Respondent the Warden at FCI-Schuylkill, who is the proper Respondent.  28 U.S.C. Sections 2242 & 2243.

**FILED**

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

07 1656

Petitioner's conduct as charged by Mrs. Feger, along with corroborating evidence, were the basis of the DHO's finding, and this was clearly substantiated by the evidence. Petitioner's claim that his testimonial evidence from inmate Williams was disregarded by the DHO in violation of his due process rights is also unsupported, as stated above.

Petitioner ignores the fact that, according to the Incident Report, he was not charged with exposing himself or engaging in a sex act with another inmate. Therefore, we find no merit to the arguments of Petitioner that he was charged with a more severe offense for retaliatory reasons, that there was insufficient evidence to find him guilty of the charge and that he was deprived of his due process rights. We find that there was sufficient evidence for the DHO's determination that the Petitioner engaged in a sexual act.

Accordingly, we do not find any merit to Petitioner's due process claims.

### 4. *Sanctions Imposed.*

Finally, we agree with Respondent that Petitioner's sanctions imposed by the DHO were neither arbitrary nor capricious. The sanctions were also within the BOP's policy for the severity of the prohibited act of which Petitioner was found guilty. (Doc. 13, pp. 4-5).

The BOP regulations provide the following sanctions for a Code 205 engaging in sexual act offense:

> B.    Forfeit earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

16

B.1    Disallow ordinarily between 25 and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

D.    Disciplinary segregation (up to 30 days).

F.    Withhold statutory good time.

G.    Loss of privileges: ... .

28 C.F.R. § 541.13, Prohibited Acts and Disciplinary Severity Scale, p. 583.

We agree with Respondent (Doc. 13, p. 5) that Table 3 of 28 C.F.R. § 541.13 allows for the exact sanctions which the DHO imposed on Petitioner for his high severity offense.

We therefore agree with Respondent that Petitioner's stated sanctions for his Code 205 violation were within the BOP regulations.

The DHO also documented his reasons to impose the stated sanctions for the offense, particularly due to the commission of the charged sexual offense by the Petitioner in view of female staff. (Doc. 13, Ex. 1, p. 9, DHO Report, ¶ VII.).

## III. Recommendation.

Based on the foregoing, we respectfully recommend that the Petitioner's Habeas Corpus Petition (**Doc. 1**) be denied. We also recommend that Petitioner's Motion for Preliminary Injunction/Temporary Restraining Order (**Docs. 10 & 11**) be denied.

s/ **Thomas M. Blewitt**
THOMAS M. BLEWITT
United States Magistrate Judge

Dated: August 31, 2005

17

Ex - 32

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BERNARD S. LEVI,                    :        CIVIL ACTION NO. **1:CV-05-1533**
                                    :
              Petitioner            :        (Judge Rambo)
                                    :
       v.                           :        (Magistrate Judge Blewitt)
                                    :
RONNIE HOLT, WARDEN,                :
                                    :
                                    :
              Respondent            :

## REPORT AND RECOMMENDATION

### I. Background.

On August 1, 2005, the Petitioner, Bernard S. Levi, an inmate at the Federal Correctional

Institution at Schuylkill ("FCI-Schuylkill"), filed a Petition for Writ of Habeas Corpus pursuant to

28 U.S.C. §2241 with an attached memorandum. (Doc. 1).[1]  The Petitioner filed an application

---

[1] 28 U.S.C. § 2241(c)(3) provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . (3) [h]e is in custody in violation of the Constitution or laws of the United States . . ." Petitioner claims in part that he lost too many good conduct days as a disciplinary sanction, and he seeks the removal and expungement of the sanctions including restoration of all of his good time days (i.e. 27 days). Thus, Petitioner has properly brought his claims affecting the length of his confinement in a habeas petition. *See Nelson v. Campbell*, ____ U.S. ___, 124 S.Ct. 2117, 2124 (2004). However, as discussed below, Petitioner 's injunction motion request (Doc. 34) to have the court order Mr. Feger, the husband of the prison staff member whose complaints were the bases for two "written sexual incident reports" against Petitioner, reassigned from Petitioner's living quarter, are not core habeas claims cognizable in his Habeas Corpus Petition.
Further, we agree with Respondent (Doc. 14, pp. 9-11) that Petitioner's Habeas Petition to the extent that it challenges conditions of confinement, including Petitioner's claim that he is being held in the SHU too long as a "long term [SHU] inmate even though his segregation time has expired, and that his mail is delayed, that he receives inadequate showers, and that his privileges are restricted (Doc. 7), does not raise core habeas claims and they are not proper claims for a 2241 habeas petition.

07 1656

**FILED**

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

some basis in fact." *Id.* at 456.

Prior to the DHO hearing, Petitioner was advised of his rights. During the course of the disciplinary hearing, the DHO heard testimony from the Petitioner, who indicated that he did not expose himself, he was fully clothed and that the complainant had a vendetta against him. The DHO relied upon the written Incident Report and investigation. There was no documentary evidence listed in the DHO Report at ¶ III. D. The DHO found that, despite Petitioner's testimony and despite Petitioner's claim that he did not remove his clothes and expose himself on the day in question, Petitioner did look at Mrs. Feger in a lustful manner with his hands on his erect penis in his grey sweat pants. Thus, the DHO found that Petitioner was responsible for engaging in a sexual act based on the evidence as discussed above. Further, we find Petitioner's argument that there was insufficient evidence due to the undisputed facts that he did not remove his pants and expose himself to be completely baseless. Rather, Petitioner's conduct as charged and witnessed by Mrs. Feger was the basis of the DHO's finding, and this was clearly substantiated by the evidence. Petitioner's claim that he was denied the testimonial evidence from inmates Hicks and Bingham by the DHO in violation of his due process rights is also unsupported, as stated above.

Petitioner ignores the fact that, according to the Incident Report, he was not charged with exposing himself or engaging in a sex act with another inmate. Therefore, we find no merit to the arguments of Petitioner that he was charged with a more severe offense for retaliatory reasons, that there was insufficient evidence to find him guilty of the charge and that he was deprived of his due process rights. We find that there was sufficient evidence for the DHO's determination that the Petitioner engaged in a sexual act.

20

Accordingly, we do not find any merit to Petitioner's due process claims.

**4. *Sanctions Imposed.***

Finally, we agree with Respondent that Petitioner's sanctions imposed by the DHO were neither arbitrary nor capricious. The sanctions were also within the BOP's policy for the severity of the prohibited act of which Petitioner was found guilty. (Doc. 14, pp. 6-7).

The BOP regulations provide the following sanctions for a Code 205 engaging in sexual act offense:

> B.    Forfeit earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
>
> B.1   Disallow ordinarily between 25 and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
>
> D.    Disciplinary segregation (up to 30 days).
>
> F.    Withhold statutory good time.
>
> G.    Loss of privileges: ... .

28 C.F.R. § 541.13, Prohibited Acts and Disciplinary Severity Scale, p. 583.

Further, since Petitioner's March 2005 conviction was his second violation of a Code 205 offense (the December 2004 violation was the first), Petitioner received 45 days disciplinary segregation, which under the regulations is permitted as a sanction for a repetition of prohibited acts within the same category. *See* 28 C.F.R. § 541.13, Table 5, p. 588.

21

We agree with Respondent (Doc. 14, p. 7) that Table 3 of 28 C.F.R. § 541.13 allows for the exact sanctions which the DHO imposed on Petitioner for his high severity offense.  As stated, Table 5 of the regulations allowed for the sanction of 45 days disciplinary segregation due to the repetitive nature of Petitioner's offense.

We therefore agree with Respondent that Petitioner's stated sanctions for his Code 205 violation were within the BOP regulations.

The DHO also documented his reasons to impose the stated sanctions for the offense, particularly due to the commission of the charged sexual offense by the Petitioner in view of female staff.  (Doc. 14, Ex. C, p. 3, DHO Report, ¶ VII.).

## III. Recommendation.

Based on the foregoing, we respectfully recommend that the Petitioner's Habeas Corpus Petition **(Doc. 1)** be denied.  Further, we recommend that Petitioner's amended habeas claims relating to the conditions of his SHU confinement and the length of his SHU confinement be dismissed since they are not corre habeas claims. (Doc. 7).  We also recommend that Petitioner's second Motion for Preliminary Injunction/Temporary Restraining Order **(Doc. 34)** be denied.

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

Dated:  January 19, 2006

22

Ex - 33

Administrative Remedy No. 426453-A1
Part B - Response

This is in response to your Central Office Administrative Remedy Appeal in which you complain about the cell you are confined in B-Block at USP Lewisburg. You claim the cell is too small for two inmates and that ventilation is poor. In addition, you claim there is no monthly or daily extermination of the cell to control mice. You state the conditions are in violation of decent living standards.

Our review reveals the Warden and the Regional Director adequately responded to the issues you raised in your appeal. As noted in your response from the Regional Director, the housing assignments at USP Lewisburg are sufficient and adequate to meet the needs of the institution. Furthermore, USP Lewisburg has been accredited by ACA and complies with the National Fire Protection Association, Life Safety Codes.

As indicated, the ventilation system was inspected for ACA compliance by an independent source. In regard to pest problems, the institution's Safety Department inspects all areas of the institution for any pest problems. If a problem is noted, the area is treated for by the Safety Department. If there is a pest problem in your cell, we encourage you to notify the Unit Manager to contact the Safety Department. We concur with the responses provided. Accordingly, your appeal is denied.

_January 9, 2007_
Date

Harrell Watts, Administrator
National Inmate Appeals

07 1656

**FILED**

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ex - 34

Department of Justice

Federal Bureau of Prisons

**Incident Report**

| 1. NAME OF INSTITUTION |
|---|

**PART I – INCIDENT REPORT**

| 2. NAME OF INMATE | 3. REGISTER NUMBER | 4. DATE OF INCIDENT | 5. TIME |
|---|---|---|---|
| S14 214 | | | |

| 6. PLACE OF INCIDENT | 7. ASSIGNMENT | 8. UNIT |
|---|---|---|

| 9. INCIDENT | 10. CODE |
|---|---|

11. DESCRIPTION OF INCIDENT (Date:       Time:       Staff became aware of incident)

| 12. SIGNATURE OF REPORTING EMPLOYEE | DATE AND TIME | 13. NAME AND TITLE (Printed) |
|---|---|---|

| 14. INCIDENT REPORT DELIVERED TO ABOVE INMATE BY | 15. DATE INCIDENT REPORT DELIVERED | 16. TIME INCIDENT REPORT DELIVERED |
|---|---|---|

**PART II – COMMITTEE ACTION**

17. COMMENTS OF INMATE TO COMMITTEE REGARDING ABOVE INCIDENT

18. A. IT IS THE FINDING OF THE COMMITTEE THAT YOU:
COMMITTED THE FOLLOWING PROHIBITED ACT.

DID NOT COMMIT A PROHIBITED ACT.

B. THE COMMITTEE IS REFERRING THE CHARGE(S) TO THE DHO FOR FURTHER HEARING.

C. THE COMMITTEE ADVISED THE INMATE OF ITS FINDINGS AND OF THE RIGHT TO FILE AN APPEAL WITHIN 15 CALENDAR DAYS.

19. COMMITTEE DECISION IS BASED ON THE FOLLOWING INFORMATION

20. COMMITTEE ACTION AND/OR RECOMMENDATION IF REFERRED TO DHO (CONTINGENT UPON DHO FINDING INMATE COMMITTED PROHIBITED ACT)

**07 1656**

**FILED**

21. DATE AND TIME OF ACTION    (THE UDC CHAIRMAN'S SIGNATURE NEXT TO HIS NAME CERTIFIES WHO SAT ON THE UDC AND THAT THE COMPLETED REPORT ACCURATELY REFLECTS THE UDC PROCEEDINGS.)

**SEP 20 2007**

**NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT**

| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |
|---|---|---|

Record    Blue – To Inmate after UDC Action
Pink – To Inmate within 24 hours of Part I preparation

Previous editions not usable

BP-288(52)
JANUARY 1988

/Ex - 35

**Administrative Remedy No. 434903-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy Appeal in which you allege that staff have conspired in a criminal manner to sabotage your access to the appeal process and prepared a false incident report against you on July 19, 2006. You request that staff be reprimanded, be ordered to attend additional training, and that drugs or weapons not be placed in your cell by staff.

Our review reveals that on July 19, 2006, you received an incident report (#1491489) for Refusing to Obey an Order of Any Staff Member (Code 307) and Conduct Which Disrupts or Interferes With the Security or Orderly Running of the Institution (Code 399). On August 4, 2006, the Discipline Hearing Officer expunged Incident Report #1491489. The reporting staff complied with Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>, by writing the incident report charging you with committing the prohibited acts. Staff have a duty and legal obligation to report the truth and submit an accurate statement. The fact that the incident report was ultimately expunged is not evidence that staff wrote a false incident report.

We do not find any evidence to support your allegation that staff have conspired in a criminal manner to sabotage your access to the appeal process. Staff have been responsive to your concerns as is evidenced by the instant appeal, as well as a number of other Administrative Remedy filings during your confinement at FCI Allenwood. Finally, we do not find, nor have you provided, any evidence that staff placed drugs or weapons in your cell.

Based on the foregoing, your appeal is denied.


_____
Date

_____
Harrell Watts, Administrator
National Inmate Appeals

07 1656

FILED

SEP 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT